The People of the State of Illinois, Plaintiff-Appellee, *v.* Nathaniel Allen, Defendant-Appellant.

(No. 70-221;

Second District—August 2, 1971.

Michael F. O'Brien, of St. Charles, for appellant.

William R. Ketcham, State's Attorney, of Geneva, (W. Ben Morgan, of counsel,) for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant appeals from a judgment convicting him of armed robbery after a jury trial.

He claims that he was deprived of a speedy trial and that the admission of evidence of other alleged wrongdoing deprived him of a fair trial. He raises no question as to the sentence or as to the quantum of proof.

Defendant urges that he was denied a trial within 120 days of his arrest, as required by Ill. Rev. Stat. 1967, ch. 38, par. 103—5. The trial first began on August 21st, 1969. His argument is based upon a statement submitted to the parole board subsequent to sentencing in which the date of arrest and the date for jail credit is written "4/20/69." The statement is signed by the State's Attorney and approved by the court in accordance with Ill. Rev. Stat. 1969, ch. 108, par. 203. The same date appears in the Mittimus. The State, however, claims that defendant was arrested on April 24th, 1969, for the robbery of the Prince Castle in

Aurora alleged to have occurred on April 20th, 1969, and thus claims that the trial, which began on August 21st, occurred on the 119th day following the arrest. An examination of the transcript supports this view. The April 24th date is confirmed by the testimony of the arresting officers, by the defendant's own testimony, by the testimony of co-defendants, and by the written statements of the defendant in evidence.

In determining whether defendant has been afforded a speedy trial we may look at both the transcript of proceedings and the common law record to do justice. (*People v. Jenkins* (1968), 101 Ill.App. 414, 418.) However, the Official Statement of the State's Attorney and Trial Judge is not part of the common law record (*People v. Lantz* (1944), 387 Ill. 72, 76) and cannot be relied upon in cases of variance between it and the common law record. (*People v. Saxton* (1948), 400 Ill. 257, 260.) The same observations apply to the *mittimus*. See *United States ex rel. Sterling v. Pate* (7th cir. 1968), 403 F.2d 425, 427, *cert.* den. 396 U.S. 911. The manifest weight of the evidence indicates that the date of arrest was April 24th, 1969, not April 20th, with the clear indication that the date in the Official Statement was a clerical error; the April 20th date was apparently adopted by the *mittimus* from the Official Statement. The defendant has not sustained the burden incumbent upon him to show that he is eligible for a discharge under ch. 38, par. 103—5, *supra. Cf. People v. Behning* (1970), 263 N.E.2d 607, 609.

A mistrial was declared on August 21st, 1969, and concurrently an order was entered setting the case for trial again on August 22nd. On August 22nd the State filed a motion to extend the time for trial for the purpose of securing a necessary witness. The motion was granted on September 8th, 1969, over defendant's objection and after defendant's request for a discharge under the 120-day rule. The second trial began on September 10th, 1969, which was some three weeks after the mistrial. We do not think that defendant's claim that the trial court abused its discretion in granting the State a continuance following the mistrial is well taken. The defendant argues that the State's motion and supporting affidavit were deficient in form and in fact. However, since the record fails to show a lack of due diligence by the State or any actual prejudice suffered by defendant because of the delay, we are not justified in finding that prejudicial error occurred. (See *People v. Hudson* (1970), 46 Ill.2d 177, 183, 184.) The defendant was re-tried within a reasonable time after the mistrial. (See Ill. Rev. Stat. 1967, ch. 38, par. 103—5(e), *supra.*) His right to a speedy trial was not violated under the circumstances of this record.

The further claim of defendant—that the admission of evidence that he was involved in a separate robbery on April 24th, 1969, deprived him of

a fair trial—raises a more substantial issue and requires an examination of the particular evidence.

The employees of the Prince Castle testified that three youths were noticed in the premises on April 20th, 1969; that one positioned himself behind a customer at the register, one at the west end and one at the east end of the shop; and that although the individuals had not been seen upon entry, all three were observed leaving by the east door after the robbery. Defendant was identified as the one who was stationed at the east door. Officer Beatus testified that defendant's statement was taken on April 24th and that in it Allen said that he was in the Prince Castle on April 20th, 1969; that Cecil Grissette and Larry Kelly were also present; that defendant ran through the park after the robbery; and that he received $97 from its proceeds. Defendant's statement was admitted in evidence.

Larry Kelly was then called as a defense witness. On direct examination Kelly testified that only he and Grissette were together in the Prince Castle robbery; that they both had entered and left via the east door; and that he was arrested about four days after the April 20th robbery and saw defendant at the police station on the date of his arrest. On cross examination, Kelly stated that defendant had come into the Prince Castle after Cecil and he had entered; that defendant had only stayed for about 10 seconds before leaving; that they caught up to defendant running in the park; and that the three of them went to Cecil's house where defendant received some of the proceeds.

On further cross-examination, the State impeached Kelly by Kelly's statement made on the 24th in which he had said that defendant was part of the April 20th robbery of the Prince Castle. However, after impeaching Kelly's previous testimony, the State's Attorney continued to question Kelly relative to his April 24th statement and over objection elicited testimony to the effect that Kelly and defendant had robbed the "Country Cupboard" on April 24th, 1969. The trial court agreed with the State that this last testimony was admissible as "tending to discredit the witness."

Defendant testified that he had entered the Prince Castle by the west door and had seen Grissette and Kelly, whom he knew, "pulling a stick-up"; that thereupon he ran into the park, but they caught up to him; that he went to Cecil's home with them where Cecil gave him $97 in satisfaction of a $100 debt which Cecil owed him.

■ Evidence which discloses that an accused committed crimes other than the one charged is admissible where such evidence is relevant to a contested issue in the case and tends to establish the crime charged. (*People v. Davis* (1958), 14 Ill.2d 196, 200; *People v. Spaulding* (1923),

309 Ill. 292, 304. See also *Anno*: 42 A.L.R. 2d 854, *et seq.*) But such evidence is not admissible where it only has value to create an inference—necessarily prejudicial—that because a man has committed other crimes he is more likely to have committed this one. *People v. Lehman* (1955), 5 Ill.2d 337, 342, 343; *People v. Durkin* (1928), 330 Ill. 394, 404.

Defendant has argued generally that the testimony of the subsequent crime was independent and unconnected with the crime charged and was therefore irrelevant. While the specific point has not been made here, we are aware of Illinois authority (*e.g., People v. Hobbs* (1921), 297 Ill. 399, 414, 415; *People v. Gotler* (1924), 311 Ill. 387, 391; and *People v. Lehman,* 5 Ill.2d 337, *supra,* at page 343) which makes a distinction between proof of prior and subsequent similar offenses when the issue is one of knowledge and intent. This distinction seems to have been peculiar to Illinois (see *Anno*: 42 A.L.R.2d 854-890, *supra*) and moreover, not consistently adhered to in the Illinois cases in *every* instance in which intent was in issue. (E.g., *People v. Cione* (1920), 293 Ill. 321, 332, 333; *People v. Bracken* (1966), 68 Ill.App.2d 466, 472; *People v. Richardson* (1959), 17 Ill.2d 253, 259.) We believe that the real test of the admissibility of other crimes to be distilled from the decisions remains that of independent relevance to an issue in the case.

██ In this view, the evidence brought out in the cross-examination of Kelly was relevant for more than one reason. It was relevant to explain the nature of defendant's presence and conduct at the scene of the crime charged which could otherwise be said to be equivocal. The defendant admitted that he was present during the charged robbery of the Prince Castle but asserted, in effect, that he did not participate in the robbery. The participation with one of the same persons in a similar offense some four days later tends to refute the defendant's explanation of his allegedly innocent presence at the scene of this crime. Defendant's presence during this robbery may be said to be an equivocal act which would be innocent or criminal depending upon the intent or motive with which his presence at the scene of the crime is invested. The offered evidence is relevant to establish the purpose of his presence, that is, whether innocent or as a participant in the crime. (See *Bush v. United States* (9th cir. 1959), 267 F.2d 483, 489.) It was also relevant in refutation of Kelly's ambiguous testimony which sought to show that defendant was not a participant in the Prince Castle robbery, but was there by coincidence. And the evidence of another similar armed robbery in the same community of a similar type of business just four days subsequent to the crime charged, involving defendant and one of the same participants in the crime charged might also be said to show a peculiar plan to commit this particular offense, thus falling within the rule of *People v. Lehman,* 5 Ill.2d

337, *supra,* at page 343. See also *People v. Hill* (1968), 98 Ill.App.2d 352, 359, 360.

■ Even if it were to be considered that the evidence of the participation of defendant in the subsequent robbery was erroneously admitted or that the State was allowed to go into this evidence in more detail than necessary to show defendant's participation in the April 20th crime, there still would not be reversible error in our opinion. There was other strong evidence of defendant's participation and guilt: he was at the scene of the crime; he ran from the Prince Castle; he voluntarily joined the two others whom he knew had just committed the robbery; he shared in the proceeds (receiving approximately one-third), knowing the proceeds to have been stolen; and four days later he was in the company of one of the known robbers (Kelly) and, with him, unsuccessfully attempted to flee upon being accosted by the police. When the competent evidence shows beyond all reasonable doubt that a defendant is guilty in a case in which the jury does not judge the penalty to be inflicted, an error in the admission of evidence of other offenses does not call for reversal, when—as here—the jury could not have reasonably found the defendant not guilty. *People v. Tranowski* (1960), 20 Ill.2d 11, 17.

Although the trial court should have admonished or instructed the jury as to the limited purpose for which Kelly's testimony of the other offense was to be considered, in the absence of defendant's request for such an admonition or instruction, no affirmative duty rests on the court to so admonish or instruct, and thus no error arises from the failure to do so. *People v. Smith* (1960), 18 Ill.2d 547, 553.

We, therefore, affirm the judgment below.

Judgment affirmed.

MORAN, P. J. and GUILD, J., concur.