THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE HORTON *et al.,* Defendants-Appellants.

(No. 57169;

First District (5th Division)—October 5, 1973.

James J. Doherty, Public Defender, of Chicago, (Suzanne M. Kohut, Assistant Public Defender, of counsel,) for appellants.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and Mariann Twist, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

Defendants, George Horton and Eugene Horton, and one Felton Peck were charged with the murder of Terry Tomalak. Peck's cause was severed and he was tried separately and convicted. A jury found defendants George and Eugene Horton guilty and sentenced each of them to a term of 100 to 150 years in the penitentiary.

On appeal the Hortons claim they were denied a fair trial because: (1) the prosecutor elicited and facilitated testimony designating defendants and a severed codefendant in the aggregate; (2) the prosecutor in questioning on direct examination was actually testifying himself, to the prejudice of defendants; (3) that the trial court erred in admitting certain evidence which was cumulative and prejudicial; (4) that the prosecutor made certain improper and prejudicial remarks during closing argument; (5) that the prosecutor through his cross-questioning made certain insinuations which he failed to support with rebuttal testimony; (6) that defendants' privilege against self-incrimination under the fifth amendment was violated; and (7) that certain hearsay statements were allowed into evidence. Defendants also claim error in

the withholding from them of certain grand jury minutes and finally that the sentences were excessive.

On March 21, 1971, one Terry Tomalak, a social worker, was beaten and stabbed to death in the apartment of Jacqueline Mack in a Chicago Housing Authority project. He was a caseworker for the Cook County Department of Public Aid which was servicing her and her children as recipients of public aid. Present in the apartment on that evening were Mrs. Mack, Tomalak, the defendants along with the severed codefendant Peck, and one Patsy Taylor. Tomalak was the only white person present.

Mrs. Mack testified that the two defendants, along with Patsy Taylor, came to visit her around 8:30 P.M. that evening. Later Tomalak arrived and finally Peck joined this group. Mrs. Mack testified that some time later in the evening an argument ensued between Tomalak and Peck. Someone hit Tomalak and he fell into her bedroom. Defendants and Peck then followed Tomalak into the bedroom and all three began to beat him. This beating continued with both defendants and Peck hitting Tomalak over the head with lotion bottles and whiskey bottles. Mrs. Mack tried to phone the police but was restrained by Peck and told by him to stand and watch because they were going to kill him. Mrs. Mack then continued to describe how the defendants and Peck continued to beat Tomalak until he was crying and pleading for his life. She then saw Tomalak running toward the front door and being stabbed in the back by Peck. When Tomalak fell to the floor, Mrs. Mack saw the defendant, Eugene Horton, pick up the knife and then she ran into the bedroom. She heard the struggle continue and then looked out of the bedroom door and saw Tomalak lying on the floor in front of the sofa.

Patsy Taylor corroborated Mrs. Mack's testimony. She testified that she heard an argument and heard sounds of fighting. She also saw Tomalak in the bedroom with defendants while his head was covered with blood.

Dr. Edward Shalgos testified on behalf of the State that he examined the body of Tomalak and found bruises and swelling on various parts of the body. He also found 12 stab wounds and evidence that Tomalak had been choked.

Defendant George Horton did not take the stand. Eugene Horton testified in his own defense. He admitted being present in the apartment but denied having assaulted Tomalak. Instead, he testified that he just watched the fight between Peck and Tomalak and then his brother broke up the fight. When he left the apartment, Tomalak was still alive.

OPINION

■■ Defendants do not contend that the evidence was insufficient to

prove them guilty beyond a reasonable doubt. Rather, they argue that without consideration of guilt or innocence, this court should reverse these convictions due to the actions of the prosecutor. "It is settled, however, that where evidence of guilt is clear and convincing, a conviction will not be reversed because of improper argument by a prosecuting attorney unless it appears that the argument may have influenced the result or the verdict would have been otherwise had the argument not been made." (*People v. Zummo*, 8 Ill.App.3d 110, 289 N.E.2d 194; *People v. Hines*, 30 Ill.2d 152, 195 N.E.2d 712.) It should be noted that most of the objections raised by the defendants were not included within their written motion for new trial. Normally, since the objections were not raised in the written motion, we would consider them waived (*People v. Jennings*, 5 Ill.App.3d 661, 284 N.E.2d 41; *People v. Irwin*, 32 Ill.2d 441, 207 N.E.2d 76), but as defendants were indigent and the record of proceedings had not been available to them when the motion for new trial was filed, we shall review these contentions of defendants along with those properly preserved.

Defendants first argue that it was error for the prosecutor to elicit testimony from his witnesses aggregating the defendants and the severed codefendant Peck. Defendants cite numerous responses from the witness, Mrs. Mack, as referring to all three boys. However, the witness was testifying to events within her hearing but not within her eyesight. It was therefore understood that she could not specify which individual was the declarant. Throughout most of this testimony, no objections were made. The questions of the prosecutor were proper, calling for specific facts. In other parts of her testimony, the witness was quite clear as to which of the three boys she was referring to. There was evidence which could lead the court and jury to believe defendants were accountable for the actions of Peck. (Ill. Rev. Stat. 1961, ch. 38, par. 5—2; *People v. Richardson*, 32 Ill.2d 472, 207 N.E.2d 478.) We feel that the jurors were not mislead by this testimony and no prejudice was shown. Defendants could also have cleared away any confusion by using the normal techniques available on cross-examination.

■■ Defendants contend that many of the prosecutor's questions were phrased so as to repeat the description of decedent's predeath torture and thus turn the prosecutor into a witness. The trial court sustained some of defendants' objections to these questions and overruled others. The questions were proper. Each question concerned a different fact so that the questions were not repetitious. The phrase, "when Terry Tomalak pleaded for his life," was included within the questions to give a time frame for the witness. The constant objections by defendants, many of them overruled by the trial court, forced the prosecutor to

include the above phrase in his questions, in order to maintain some consistency in the testimony and to avoid confusing the witness and the jury. We find no prejudice in the prosecutor's conduct.

Defendants also object to the testimony of Tomalak's mother, arguing that the evidence given by Tomalak's father was sufficient and that Mrs. Tomalak's testimony was cumulative and her repetition of the fact that Tomalak had gone to choir practice was prejudicial. In view of the overwhelming evidence of guilt presented in this case and reiterating that the defendants do not contest the basic conviction on appeal, we feel that the admission of this repetitive testimony was not prejudicial.

■■■ Defendants next claim that the prosecutor both on direct and on cross-examination made unsupported insinuations concerning defendants, among which were that they stole money from Mrs. Mack's apartment and that their mother tried to tamper with prosecution witnesses. They argue that rebuttal evidence should have been introduced to support these accusations. With reference to the testimony of defendants' mother, the only relevant comment was that she had talked to Mrs. Mack and Patsy Taylor. This was the extent of the direct examination by the State on this subject. The defense had ample opportunity to cross-examine the witness and to dispel any unfair inferences which might have arisen, but they chose not to do so. When defendant Eugene Horton took the stand, he told his version of what took place. The prosecutor in questioning defendant broached subjects which had been referred to earlier, especially in the testimony of Mrs. Mack, and which related to his direct testimony. For example, Mrs. Mack had previously testified that defendants took money from her to make it seem like a robbery had been committed. This subject matter was certainly relevant and the prosecutor was questioning the accused as to whether he took the money. "The defendant who takes the stand and testifies in his own behalf in a criminal case not only offers himself as a witness in his own behalf but thereby subjects himself to legitimate cross-examination. The extent of cross-examination with respect to an appropriate subject of inquiry rests in the sound discretion of the trial court. It is only in the case of a clear abuse of such discretion resulting in manifest prejudice to the defendant that a court of review will interfere." (*People v. Burris*, 49 Ill.2d 98, 104, 273 N.E.2d 605.) We find that the trial court did not abuse its discretion.

■■ Defendant George Horton contends that his rights under *Miranda v. Arizona*, 384 U.S. 436, were violated when statements he made were twice recounted by police officers on the stand. The first witness de-

scribed the details of the arrest of defendant and when asked if defendant said anything, he replied, "no." The officer had already testified that the defendant had been advised of his constitutional rights. No objection was made at trial to this statement. A second officer then testified that George Horton admitted his presence at the scene of the crime. This same officer had also testified to having given defendant a statement of his constitutional rights and again no objection had been made at trial. Since it is uncontested that defendant was apprised of his constitutional rights, there can be no error in the admission of this testimony.

■■ Both defendants allege error in the admission of numerous hearsay statements into evidence. Some of these statements were not objected to at trial and must be considered as waived. (*People v. Williams*, 117 Ill.App.2d 34, 254 N.E.2d 81.) Defendants particularly object to the testimony of one officer describing what Mrs. Mack told him about the events taking place. In *Williams* the court stated: "[E]ven if hearsay testimony had been improperly admitted, reversal is not warranted where the same matter has been proved by independent and properly admitted evidence." Mrs. Mack had previously taken the stand and related the exact testimony. We find no prejudice to have resulted from the admission of this hearsay testimony.

■■ Defendants contend that the prosecutor's withholding the grand jury testimony of Mrs. Mack impaired defendants' right of cross-examination. Defendants cite Illinois Supreme Court Rule 412(a) to support their argument. The defense was handed a copy of the grand jury minutes at the outset of its cross-examination of the witness. At this time a short recess was requested and granted. Defendants do not allege any surprise. They had full use of the statements for cross-examination purposes. If they felt more time was necessary to study the minutes, they could have asked for a further or longer recess; they did not. The court in *People v. Williams*, 132 Ill.App.2d 998, 271 N.E.2d 73, noted that motions of this type (for grand jury minutes) are addressed to the sound discretion of the court. In addition to the factors referred to above, the *Williams* court also mentioned:

> "There is nothing to show that defendants did not have ample opportunity to investigate and examine the witnesses in advance of trial if they had desired to do so. There is, also, nothing to show lack of cooperation from the standpoint of witnesses. Similarly, there is nothing in the record which shows that the attorney for defendants was foreclosed or limited in his time or opportunity to cross-examine the witnesses."

These additional factors are also applicable to the instant case. We therefore find no abuse of discretion nor prejudice accruing to defendants.

■■ We find no merit in defendants' claim that prejudice resulted from the prosecutor's closing argument wherein he referred to the demeanor of defendants in not batting an eye when a picture of decedent was passed in front of them while they were sitting at the defense table.

We have reviewed all claimed trial errors individually and find that both separately or viewing these claims in the aggregate defendants were not deprived of a fair trial.

■■ Finally, defendants contend that the sentences of from 100 to 150 years each are excessive. The sentences clearly fall within the limits prescribed by the legislature. (Ill. Rev. Stat. 1961, ch. 38, par. 9—1(b).) The Illinois Supreme Court has held in *People v. Fox*, 48 Ill.2d 239, 269 N.E.2d 720, that:

> "Where it is claimed that the punishment imposed is excessive, although within the limitations prescribed by the legislature, that sentence should not be disturbed unless it is greatly at variance with the purpose and spirit of the law or manifestly in excess of the proscriptions of section 11 of Art. II of the Illinois Constitution which requires that all penalties should be proportioned to the nature of the offense. The trial court is normally in a superior position during the trial and the hearing in aggravation and mitigation to make a sound determination as to the punishment to be imposed than are courts of review."

We find no reason for disturbing the sentences.

The judgments are affirmed.

Affirmed.

ENGLISH and SULLIVAN, JJ., concur.