THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BRIAN HUTTER, Defendant-Appellant.

(Nos. 74-121, 74-228 cons.;

Second District (1st Division)—June 6, 1975.

Gilbert N. Ellsworth, of Rockford, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz and Martin Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

Following a jury trial, the defendant, Brian Hutter, was convicted of attempt to commit murder, and was sentenced to serve a 4- to 7-year term of imprisonment. On appeal, the defendant contends (1) that the trial court erred in denying the defendant's motion *in limine* which sought to exclude evidence of controlled substances and weapons, allegedly not directly related to the offense of attempted murder, and that the trial court improperly admitted such evidence; (2) that the trial court improperly instructed the jury that evidence of other crimes of the defendant had been presented solely on the issue of the defendant's motive, but that the State was not required to establish a motive for the commission of the offense; and (3) that the evidence leaves a reasonable doubt as to the defendant's guilt, and that consequently, he was not proven guilty beyond a reasonable doubt.

Having fully reviewed the testimony of the witnesses and the exhibits admitted into evidence, we conclude that no reversible error was committed by the trial court, and that the defendant was proven guilty beyond a reasonable doubt. We therefore affirm the judgment.

The defendant was indicted and charged with having committed the offense of attempt murder of Officer Richard McMahon of the Winnebago County Sheriff's Department. The incident occurred shortly after midnight on August 21, 1973, when a narcotics task force and other police officers forcibly entered the dwelling of Wayne Gutowsky, pursuant to a valid search warrant. The search warrant was based upon a surveillance of Wayne Gutowsky, who was suspected of selling methamphetamine, a controlled substance under the Controlled Substances Act. At the time the search warrant was executed, the Gutowsky residence was occupied by Wayne Gutowsky, Donna Gutowsky, and their two children. In addition, the defendant and a female companion had been residing at the Gutowsky home for several days.

The defendant admitted that he had fired a .38-caliber automatic pistol through his bedroom door and that one of the bullets fired by him had wounded Officer McMahon's hand. However, the defendant contended that when he fired the pistol, he did not have knowledge of the

officers' identity as police officers. Rather, he asserted that he believed that the persons attempting to enter his bedroom were members of a street gang, who had burglarized and set fire to his former apartment. He argued that his actions were justifiable based upon defense of self and defense of a dwelling when entry is made in a tumultuous manner. Consequently, the defendant's knowledge or lack of knowledge of the police officers' identity, his asserted belief that when he fired the weapon he did not know that the persons were police officers, and the reasonableness of his asserted belief were the crucial issues at the trial.

Officer Robert Combs testified that on August 21, 1973, at approximately 12:30 A.M., pursuant to a search warrant, he and other officers in plain clothes knocked on the door of the Gutowsky residence and announced that they were police officers with a search warrant. After knocking a second time and shouting their identity and purpose, Combs stated that he heard what sounded like two or more people running inside the house. At that point, in order to prevent the destruction of the subject matter of the warrant, the officers kicked in the front door. Combs testified that as he and Officer McMahon entered the premises, he saw a person run toward one of the bedrooms. According to Combs, McMahon shouted that he was a police officer and simultaneously displayed his identification badge. While other officers secured the remainder of the house, Combs and McMahon proceeded to the door of the bedroom into which the person had run, and attempted to gain access to the room. Combs testified that he and McMahon shouted five to eight times that they were police officers. As they began to kick in the bedroom door, two shots were fired through the door from inside the room, one of which wounded McMahon. The officers returned the fire. According to Combs, when he and McMahon gained access to the bedroom, the defendant was behind a dresser with a gun in his hand. With his gun the witness struck the defendant on the head, and the defendant's weapon fell to the floor. Combs testified that he subsequently placed the defendant's gun on the dresser and observed that the gun had jammed.

Officers Richard McMahon, Charles Bishop, and Richard Galvononi testified regarding their roles and observations in executing the search warrant of the Gutowsky residence. Their testimony was substantially in accord with Combs' account of the incident. All stated that they had shouted that they were police officers.

In addition, the State presented evidence technicians, a firearms identification expert, and a drug identification expert, who related the location, condition, and nature of certain exhibits. In searching the bedroom, incident to the defendant's arrest, the officers found approximately five grams of marijuana and a derringer pistol. In addition, evidence obtained

pursuant to the search warrant produced a gray box, located in the Gutowsky's recreation room, which contained cocaine, syringes, and hypodermic needles. Amphetamines were found in an orange container located in the kitchen. Further, a sawed-off shotgun and a box of shells were found in plain view in the recreation room.

The police officers who testified attributed possession of the gray box, containing cocaine and hypodermic needles, possession of the orange box, containing amphetamines, and possession of the sawed-off shotgun to Wayne Gutowsky, the owner of the premises. Furthermore, Wayne Gutowsky testified that he had been indicted for possession of the controlled substances and weapon found in his home, excluding that which was found in the bedroom occupied by the defendant. The defendant admitted possession of the marijuana and derringer found in his room, but he denied knowledge of and possession of the other controlled substances found in the search of the Gutowsky home. However, the defendant testified that he had knowledge of the sawed-off shotgun in the Gutowsky recreation room. It is clear that the testimony heard by the jury regarding the exhibits in no manner implied that the defendant had been charged with possession of cocaine, hypodermic needles, amphetamines, or a sawed-off shot gun.

Donna Gutowsky testified on behalf of the defense that on August 21, 1973, the defendant, Brian Hutter, had been residing with her family for 4 days. Mrs. Gutowsky stated that on the evening preceding the incident she was at the place of her employment and arrived at home at 11:15 P.M. The defendant retired to his room at midnight, and she and her husband retired at approximately 12:15 A.M. About 5 minutes after she had retired, she heard a banging noise on the door. According to Mrs. Gutowsky's testimony she did not hear any voices. She testified that when she heard the sound of the outside door being kicked, her husband ran from their bedroom into the bedroom occupied by the defendant and slammed the door behind him. The witness testified that it was dark in this area of the house when the police officers entered and she did not know they were police officers. According to Mrs. Gutowsky, Officer McMahon pounded on the bedroom door, shouted in vulgar language, and did not identify himself as a police officer. However, she testified that Combs, who was positioned closer to her room, said in a "regular conversation voice" that he was a police officer. After they gained access to the bedroom, she observed that a light had been turned on in that room, and she heard her husband exclaim "Are you really police?"

On cross-examination, Mrs. Gutowsky did not recall the portion of her signed statement taken on the night the incident occurred, in which

she stated that Wayne had called Brian to meet him at the front door. She further denied the truth of her statement which read, "Then I heard the door crash open and Brian and Wayne came running through the hall and they both ran into the back bedroom  *  *  *  they were yelling that they were policemen  *  *  *." In addition, Donna Gutowsky denied having any knowledge of the narcotics and asserted that she had never seen the sawed-off shotgun.

Brian Hutter, the defendant, testified that on August 21, 1973, he had been residing with the Gutowsky's because his former dwelling had been burglarized and set on fire. He had filed a complaint with the Rockford police, had identified mug shots, and had been informed by the police that those who he had identified were members of a street gang with dangerous propensities. In response to this information, the defendant purchased a .38-caliber automatic pistol. On August 20, 1973, he returned from work to the Gutowsky residence at approximately 6 P.M. He testified that on the evening preceding the incident, he babysat, cleaned house, listened to music, and consumed two or three beers. After Donna Gutowsky returned from work, he fell asleep and was awakened by the pounding on the front door. He stated that Wayne ran into his bedroom, slammed the bedroom door, and told him to get his gun. He testified that he heard someone pounding on the door which Wayne was holding closed. According to the defendant, he did not hear any person state that they were police officers or that they had a search warrant. As the pounding on his bedroom door continued, Wayne was jarred away from the door, and told the defendant to shoot his gun. The defendant fired twice, and the persons outside of the room returned the fire. According to the defendant's testimony, at that point he pulled the slide on the gun back and put one safety on the gun, which he explained has three safety positions. He asserted that he placed the gun on the dresser, and that the gun had not jammed. It was then that the defendant heard a voice stating that they were the police. He stated that in response, Wayne discontinued his effort to hold the door closed and exclaimed, "Are you really, really police?"

On cross-examination, the defendant asserted that his gun was not in his hand, but was on the dresser when Officer Combs struck him, and that he had not left his room to run toward the front door. The defendant asserted that although he had seen the gray box in the recreation room, he did not have knowledge of its contents. Further, he denied possession or ownership of the items. He testified that he had seen the orange container, the sawed-off shotgun, and the shells for the shotgun, but denied ownership or possession of these items. He admitted that he had his brother's derringer pistol in his possession and that he

had approximately 5 grams of marijuana in his bedroom when the incident occurred.

Prior to the trial, the defense had submitted a motion *in limine* to exclude certain evidence. Specifically, the motion sought to preclude the State and all witnesses presented by the State from testimony, remarks, questions, or argument which might inform the jury of the grounds for the search warrant, any evidence of drugs or appliances connected with the use of drugs found during the incident, and any evidence of firearms not found in the defendant's bedroom. The defense urged that disclosure of any of these items to the jury would be highly prejudicial, even with an instruction to disregard the testimony. The trial judge denied the defendant's motion *in limine,* and found the evidence admissible after considering its relevancy against its possible prejudicial effect. The trial judge agreed with the State that in view of the defendant's admission that he had fired the gun, the issue at trial would be whether his use of force was justifiable and reasonable. Under these circumstances, the court considered the evidence, which the defendant sought to exclude, as highly relevant and admissible to establish the defendant's motion to resist arrest.

On appeal, the defendant contends that the trial court erred in denying the motion *in limine* and that testimony and exhibits concerning the controlled substances and the sawed-off shotgun were improperly admitted by the trial court. Specifically, the defendant argues that evidence concerning the cocaine, hypodermic needles, amphetamines, sawed-off shotgun, and marijuana should have been excluded as immaterial and prejudicial. The defendant further contends that this evidence was inadmissible under the general rule excluding evidence of other crimes of the defendant. The defendant argues that the trial court erroneously admitted this evidence under the exception to this general rule, which provides for the admissibility of evidence of other crimes of the defendant to show motive. It is contended that such evidence of other crimes is not admissible unless it is connected to the defendant and to the crime for which he is being tried. The defense urges that the evidence was neither connected to the defendant nor to the offense, and that, consequently, the evidence was inadmissible.

As a primary consideration in resolving this issue, we note that the evidence, which the defendant contends was inadmissible, comprises two distinct types of evidence. The marijuana, admittedly in the possession on the defendant, was evidence of a separate crime *of the defendant.* On the other hand, the cocaine, hypodermic needles, amphetamines, and the sawed-off shotgun allegedly were not possessed by the defendant,

nor does the testimony indicate that he was charged with possession of these items. Rather, these items constitute evidence of crimes *of another person.*

■■ As a general rule, evidence of other crimes committed by the defendant is inadmissible. (*People v. Lehman* (1955), 5 Ill.2d 337, 342, 343, 125 N.E.2d 506; *People v. Tranowski* (1960), 20 Ill.2d 11, 16, 169 N.E.2d 347.) However, "[e]vidence which discloses that an accused committed crimes other than the one charged is admissible where such evidence is relevant to a contested issue in the case and tends to establish the crime charged. [Citations.]" (*People v. Allen* (1971), 1 Ill.App.3d 197, 200, 272 N.E.2d 296; *People v. Barnes* (1971), 2 Ill.App.3d 461, 464, 276 N.E.2d 509; *People v. McDonald* (1974), 23 Ill.App.3d 86, 94, 318 N.E.2d 489, 494.) In determining the admissibility of evidence of other crimes of the defendant, the supreme court has stated, "The test for admission of such evidence is whether it is so closely connected with the main issue that it tends to prove the accused guilty of the crime charged." (*People v. Durso* (1968), 40 Ill.2d 242, 251, 239 N.E.2d 842.) In accord, this court has stated that the test of admissibility of other crimes of the defendant is whether there is "independent relevance to an issue in the case." *People v. Allen* (1971), 1 Ill.App.3d 197, 201, 272 N.E.2d 296.

It is well recognized that evidence of other crimes of the defendant is admissible to establish the motive of the defendant when it is in issue or relevant. (*People v. McDonald* (1974), 23 Ill.App.3d 86, 94, 318 N.E.2d 489, 494.) Moreover, evidence of other crimes of the defendant is admissible to establish the defendant's motive for killing a police officer who is attempting to arrest the defendant. *People v. Witherspoon* (1963), 27 Ill.2d 483, 487, 190 N.E.2d 281.

■■ In the case at bar, the defendant contended that he did not know that the persons at whom he fired were police officers. Rather, he asserted that he believed he was acting in self-defense. Thus, the defendant himself put the issue of his motive before the jury. In the trial of such case, the evidence that the defendant possessed marijuana at the time of the incident clearly had independent relevance to the issue of whether the defendant had a motive to fire his weapon in resisting arrest. Consequently, we find no error in admitting evidence of the defendant's possession of marijuana, even though this constituted evidence of another crime of the defendant for which he was not being tried.

Likewise, we find no error in admitting evidence of the controlled substances and the sawed-off shotgun. These items constitute evidence of other crimes of another party, and consequently, the rules controlling the admissibility of evidence of other crimes of the defendant are not

applicable. Rather, the test of admissibility for such evidence is one of relevancy to the issue in the case balanced against the prejudicial effect on the jury.

In finding no error, we find nothing in the testimony indicating that the defendant was in possession of the cocaine, hypodermic needles, amphetamines, or sawed-off shotgun. Indeed, it was clear that Wayne Gutowsky, not the defendant, had been charged with these other crimes. The testimony heard by the jury in no manner implied that the defendant had been charged with possession of these items.

■■ In view of the defendant's asserted belief that his actions were justifiable, and in view of the fact that Wayne Gutowsky had held the defendant's bedroom door closed against the officers, the controlled substances and sawed-off shotgun, allegedly possessed by Wayne Gutowsky, were relevant to the issue before the jury. Any prejudicial effect that this evidence may have had upon the jury was outweighed by the relevancy of this evidence in establishing the defendant's motive. Thus, we conclude that this evidence was properly admitted by the trial court.

■■ A second issue presented on appeal is whether the trial court erred in instructing the jury that

> "Evidence has been received that the defendant has been involved in crimes other than that charged in the indictment. This evidence has been received solely on the issue of defendant's motive. This evidence is to be considered by you only for the limited purpose for which it was received."

The defendant contends that there was no evidence of other crimes of the defendant presented to the jury. This contention is without merit for, as stated above, the marijuana, admittedly possessed by the defendant, certainly was within the classification of evidence of other crimes of the defendant. There was no error in giving this Illinois Pattern Jury Instruction. Indeed, this instruction was "designed to protect the interest of the defendant and could not prejudice him." *People v. Witherspoon* (1963), 27 Ill.2d 483, 487, 190 N.E.2d 281.

Further, the defendant contends that the trial court erred in instructing the jury that the State need not prove motive. The defendant asserts that because evidence had been admitted solely for the purpose of establishing motive and because the prosecutor commented on motive in final argument, this Illinois Pattern Jury Instruction was erroneously given, and is contrary to the IPI Committee Note which reads:

> "See, *People v. Dore*, 339 Ill. 415, 419-420, 171 N.E. 554, 556 (1930); *People v. Corder*, 306 Ill. 264, 267, 137 N.E. 845, 847 (1923); *People v. Enright*, 256 Ill. 221, 233-235, 99 N.E. 936, 941 (1912).

However, in the *Enright* case the Illinois Supreme Court observed (256 Ill. at page 234, 99 N.E. at page 941), "If the People claim that a motive existed inducing the commission of the act it must be proved, and, like any other circumstance, cannot be inferred  *  *  *.' Accordingly, if the People adduce evidence tending to prove a motive and the prosecutor argues the circumstance of motive to the jury, this instruction should *not* be given." Ill. Pattern Jury Instruction—Criminal No. 3.04 (1968).

In *People v. Manzella* (1973), 56 Ill.2d 187, 306 N.E.2d 16, the identical issue of whether it was error to instruct the jury that the State need not prove motive, when evidence had been introduced solely for that purpose and had been commented on by the prosecutor in final argument, was presented to the supreme court. There, the court stated

"The instruction in question accurately stated the law, and had the State not introduced proof of acts and offenses of the defendant from which motive or intent could be inferred the instruction would have been proper. The prosecutor's comment during final argument on the defendant's motive, as exhibited in the proof of his other offenses, was improper, since use of the instruction is intended where the State has not attempted to prove motive. Comment by the State on the motive which caused the defendant to commit the offenses was obviously improper and constituted error." (56 Ill.2d 187, 199, 306 N.E.2d 16, 22.)

However, the court in *Manzella* held that this was not reversible error unless it reasonably appears that the jurors have been prejudiced to the extent that they cannot be fair and impartial. *People v. Manzella* (1973), 56 Ill.2d 187, 200, 306 N.E.2d 16, 22.

■■ In the case at bar, we hold that instructing the jury that the State need not prove motive was harmless error. The instruction, when viewed in the context of the entire trial, was not so prejudicial as to warrant a reversal. The evidence that the defendant's actions were not justified as self-defense, was overwhelming. Having reviewed the entire testimony adduced at the trial, it does not appear that the verdict was the result of this error. Consequently, reversal on the basis of this error is unwarranted.

■■ As a final contention, the defendant argues that he was not proven guilty beyond a reasonable doubt. In view of the fact that the defendant admitted the shooting and rested his case on self-defense, the sole issue presented to the jury was whether there was legal justification for the defendant's actions. The defendant asserted that the police officers did not identify themselves. The police officers asserted that they did identify themselves. This was a question of credibility to be determined by the

jury. "It is axiomatic that it is the function of the trier of the facts to determine the credibility of the witnesses, and its finding of guilty will be disturbed only when the evidence is so unsatisfactory as to leave a reasonable doubt as to defendant's guilt." (*People v. Glover* (1971), 49 Ill.2d 78, 84, 273 N.E.2d 367.) The evidence that the police officers announced their identity is overwhelming. Consequently, we cannot disturb the jury's finding of guilty. We therefore affirm the judgment of the trial court.

Affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.