THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PAUL J. HOWARD, Defendant-Appellant.

First District (2nd Division)   No. 61820

Opinion filed August 24, 1976.—Rehearing denied October 28, 1976.

JIGANTI, J., dissenting in part.

James R. Streicker and Steven Clark, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Eugene J. Rudnik, Jr., and Edward V. Vienuzis, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Paul J. Howard, defendant, was found guilty after a jury trial of the murder of Melvin Thomas and he was sentenced to a term of 30 to 90 years. Defendant appeals and argues (1) that the evidence was insufficient to establish his guilt beyond a reasonable doubt; (2) that the jury was improperly instructed; (3) that the trial court erred in refusing to allow testimony as to the general reputation of two State's witnesses; (4) that the closing argument of the prosecutor was improper and prejudicial; and (5) that his sentence is excessive.

At trial, James Palmer, Calvin Morgan and Johnny Ball testified that on the evening of December 22, 1973, they were at Lee Rogers' pool hall, located at 3540 W. 16th Street, Chicago, Illinois. At approximately 7:15 p.m., the victim, Melvin Thomas, entered the pool hall and proceeded to the rear of the premises where he made a telephone call. A short time later, defendant came into the pool hall, produced a pistol and fired five shots at the victim, who dropped the telephone and attempted to hide underneath a pool table; but defendant bent down under the pool table and shot the victim. Defendant then said, "I killed him," and left the pool hall.

Chicago Police Officer James McMullin testified that he and his partner responded to a call and observed the victim lying underneath the pool table at the rear of the room. Officer McMullin testified that an examination of the rear wall of the premises revealed what appeared to be three bullet holes to the right of the telephone.

After talking with several people, Officer McMullin broadcast a police dispatch. A short time later, he received a call and proceeded to a nearby liquor store where he arrested defendant. A search revealed two .22-caliber bullets in defendant's pocket. Defendant was placed in the squad car and informed of his constitutional rights under *Miranda v. Arizona* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. A .22-caliber 9-shot revolver containing eight live rounds and one expended shell was recovered at defendant's home and was subsequently identified as the weapon used in the shooting.

Chicago Police Investigator Ben Bober testified that he was assigned to investigate the incident in question and he interviewed defendant. After advising defendant of his constitutional rights, defendant stated that 10

days previously he had been "ripped off" by the victim for $160. Thereafter, defendant purchased a gun and had been "out looking" for the victim in order to "get even." Defendant admitted that he went to the pool hall and fired several shots at the victim; and, when the latter hid underneath the pool table, defendant said that he bent down and shot the victim as he had intended. Investigator Bober's examination of the pool hall revealed a hole in the stove which was located to the right of the telephone and four holes in the rear wall panelling to the right of the telephone. A badly mutilated bullet was recovered from the stove; but no bullets were recovered from the rear wall, although the police removed the panelling and a layer of plasterboard which covered a brick wall. The police did not attempt to remove portions of the floor to determine if any bullets may have ricocheted from the brick wall and fallen beneath the floor because such activity might have caused extensive damage to the structure.

Dr. Tae An, a pathologist for the Cook County Coroner's Office, testified that he performed an autopsy on the victim. Dr. An stated that in his opinion death resulted from a bullet which entered the chest and travelled in a downward path toward the back, lacerating the lung, liver and lodging in the mesentery.

Chicago Police Officer Cornealious Johnson and the Reverend Warren Turner testified that defendant's reputation in the community for truth and veracity and for being a law-abiding citizen was good.

Defendant testified that during November, 1973, he was beaten and robbed of $160 by Thomas, Ball and two other men. Defendant subsequently purchased a .22-caliber revolver and 11 rounds of ammunition. Defendant also explained that about 10 days prior to the shooting he was threatened by Thomas and two unidentified men. Defendant stated that on the evening of December 22, 1973, he entered the pool hall, and was approached by Ball, who stated that he wished to talk to him. Defendant claimed that, as he walked toward Ball, he was struck from the rear; and several men then stated that they were going to kill defendant since he had been a police informant. Thomas attacked him and during this fracas he pulled his gun, fired one shot and then backed out of the pool hall. Defendant said that he was subsequently arrested at a nearby liquor store and taken to the police station where he gave a statement in which he told the police that prior to the incident he had been beaten and robbed by Thomas. Defendant denied he told police that he was looking for the victim and intended to kill him or that he shot Thomas while the latter was hiding under the pool table.

Defendant's first contention is that the evidence was insufficient to establish his guilt beyond a reasonable doubt. Defendant claims that the three witnesses were friends of the victim; and their testimony is suspect

when viewed in conjunction with the physical evidence presented at trial, which indicated that his weapon contained only one expended shell and no other bullets were discovered in the pool hall, which conclusively can be shown to have been fired by defendant's weapon.

At trial the State presented the testimony of three eyewitnesses to the shooting, each of whom testified that defendant, without provocation, fired six shots at the victim. The last shot struck the victim as he attempted to evade defendant. The evidence further indicated a reasonable explanation for failure to recover any bullets from the wall. Moreover, defendant does not directly challenge in this appeal the testimony of Officer Bober which indicates that, after defendant was advised of his rights, he related a version of the incident to Bober which was in conformity with the testimony of the three eyewitnesses. We also note that the medical testimony relating to the path of the bullet corroborated the testimony of the State's witnesses.

■■ It is the function of the jury to determine the credibility of the witnesses and to resolve disputed questions of fact. Its determination will not be set aside on review unless the evidence was so improbable or unsatisfactory as to create a reasonable doubt of guilt. (*People v. McDonald*, 62 Ill. 2d 448, 456, 343 N.E.2d 489.) We are of the opinion that the jury's decision was proper, and the evidence overwhelmingly establishes defendant's guilt.

■■ Defendant's second contention is that the trial court improperly gave the jury IPI—Criminal No. 3.04,[1] regarding the issue of motive. The Committee Note to this instruction indicates that the instruction should not be given if the State adduces evidence tending to prove motive and the prosecutor argues the circumstances of motive to the jury. Here, the only evidence introduced by the State which would in any way tend to show motive was part of defendant's statement which was admitted into evidence. In addition, the State did not at any time argue the question of motive to the jury. The State now suggests that considering these two factors, this jury instruction was properly given. We need not decide this issue because we conclude that even if this instruction was improperly given, the error was harmless beyond a reasonable doubt, considering the overwhelming evidence of defendant's guilt. *People v. Manzella*, 56 Ill. 2d 187, 306 N.E.2d 16; *People v. Hutter*, 29 Ill. App. 3d 92, 329 N.E.2d 873; *People v. Jackson*, 22 Ill. App. 3d 873, 318 N.E.2d 249.

■■ Defendant also contends that he was prejudiced by the trial court's refusal to allow testimony concerning the reputation of the State's key witnesses. At trial, the defense attempted to present the testimony of

---

[1] Illinois Pattern Jury Instructions—Criminal, No. 3.04, states: "Motive is that which prompts a person to act. The State is not required to prove a motive for the commission of the crime charged."

Chicago Police Officer Johnson, a friend of defendant, as to the general reputation in the community for truth and veracity of the State's witnesses, Morgan and Ball. After a hearing outside the presence of the jury, the trial court refused to allow this testimony. Although defendant filed an extensive written motion for a new trial, in that motion defendant did not argue this point. The rule is well established that under these circumstances all alleged errors not contained in the written motion are deemed waived. *People v. Pickett,* 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Hairston,* 46 Ill. 2d 348, 263 N.E.2d 840; *People v. Nelson,* 41 Ill. 2d 364, 243 N.E.2d 225.

■■ Defendant next argues that the closing argument of the prosecutor was improper. Defendant complains that the prosecutor during part of his closing argument stated that defendant had not produced the testimony of anyone else present in the crowded pool hall to corroborate his version of the incident. Defense counsel objected to the remark and the objection was immediately sustained by the trial court. Even if we were to consider this remark improper, we conclude that it would have been harmless beyond a reasonable doubt given the trial court's prompt action in sustaining the objection and the overwhelming evidence of guilt. *People v. Walker,* 29 Ill. App. 3d 838, 331 N.E.2d 267; see also *People v. Blakes,* 63 Ill. 2d 354, 348 N.E.2d 170; *People v. Moore,* 55 Ill. 2d 570, 304 N.E.2d 622.

■■ Defendant's final contention is that, in view of the fact he had no prior convictions, his sentence of 30 to 90 years is excessive and should be reduced. The Illinois Constitution of 1970, article 1, section 11, mandates that a judicially imposed criminal sanction should be proportionate to the offense and be designed to return the offender to useful citizenship. While a court of review may act to modify and reduce the sentence, this power should not be employed unless it clearly appears that the sentence constitutes a great departure from the fundamental spirit of the law. (*People v. Reynolds,* 23 Ill. App. 3d 317, 319 N.E.2d 114.) Here, as the trial court noted, defendant, in a deliberate and vicious manner, took the life of another human being. Defendant's actions were not on impulse or the result of passion but were planned. The sentence imposed was well within the statutory range of the minimum and maximum fixed by statute for the offense of murder. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(1), (c)(1).) The record reflects that the trial court conducted a thorough and searching hearing in aggravation and mitigation in full compliance with the pertinent statutes prior to entering sentence. The presentence report alluded to a violation of probation and a resulting three-year reformatory sentence in the State of New York where defendant was convicted in that State's family court system on the finding of being a delinquent minor. The trial court at bar specifically stated that

the foregoing was not considered for the purpose of fixing sentence in the instant case. On the basis of the record before us, we do not find justification for modifying the sentence imposed by the trial court. *People v. Taylor,* 33 Ill. 2d 417, 211 N.E.2d 673; *People v. Horton,* 14 Ill. App. 3d 957, 304 N.E.2d 21.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DOWNING, J., concurs.

Mr. JUSTICE JIGANTI, dissenting in part:

I concur in affirming the judgment of conviction, but respectfully dissent as to the sentence. The very able trial judge noted that the murder here was not committed on the spur of the moment and that the defendant was out to find the victim. He characterized the offense as heinous. The trial judge further noted that the defendant apparently had a good work record, an excellent military record, and lacked a criminal background so that there was no need for the rehabilitation of the defendant. The trial judge's concern was with deterrents. He said the defendant must be punished for what he had done and "punished for an example to the rest of the people" that there are laws in this society and they have to be obeyed. I am mindful of the admonition of the Supreme Court in *People v. Taylor* (1965), 33 Ill. 2d 417, 424, 211 N.E.2d 673, that the power the reviewing courts have to reduce sentences should be applied with considerable caution and circumspection because of the trial judge's superior opportunity in the course of the trial and hearing on mitigation to make a sound deliberation concerning the punishment to be imposed. I am also mindful of the fact that the trial court here was very deliberate and thoughtful in its consideration of the sentence to be imposed. However, I believe that the deterrent effect on society will be just as great with a sentence of 15 to 45 years. Such a sentence would also give a man, age 39, who was a useful citizen up until the time of this occurrence, an opportunity to return to useful citizenship again in accordance with article 1, section 11, of the Illinois Constitution of 1970. In the event he fails to indicate to the Department of Corrections during the course of his confinement that he will probably be able to be returned to useful citizenship then, of course, he can be retained in the institution up to the maximum number of years.