THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES BLAND, Defendant-Appellant.

First District (4th Division)   No. 76-1320

Opinion filed February 28, 1978.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos and Andrea D. Lyon, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Kenneth T. McCurry, and James V. Marcant, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The defendant James Bland was indicted for murder and following a jury trial was convicted of voluntary manslaughter. Defendant was sentenced to a term of six years, eight months to 20 years. The sole issue on appeal is whether his guilt was established beyond a reasonable doubt. We affirm.

Mrs. Kirby, the mother of the deceased, Richard Kirby, testified for the State: At about midnight on the night of her son's death she received a telephone call at her home from the defendant. She recognized the voice because she had spoken with him by phone five or six times before and also had spoken to him when he had come to her home. Defendant asked to speak to Richard, and when informed Richard was not at home said he would call before 12:30. A few minutes later when Richard came in she informed him of the call. Richard said he did not want to be bothered, mentioning that there had been a fight earlier which he had broken up. A few minutes later defendant called again, identifying himself to Mrs. Kirby. She recalled her son taking the phone and telling defendant not to bother him, that he did not want to get involved in the fight. He also told defendant, "I pulled him off of you." After Richard hung up he told his mother, "He is coming over to kill me." When she expressed her concern he laughed and told her not to worry about it. Then a third call came; Richard told his mother it was from the defendant. He told the defendant "If you're coming over, come." When he hung up Richard told his mother he was going to go downstairs and talk to the defendant. Mrs. Kirby asked him not to, saying that she would call the police, but Richard said that he would talk to him and only if that did not work should she call the police.

Mrs. Kirby followed her son downstairs, asking him to come back up and call the police. As she stood outside talking with him she saw the defendant approaching, with his right hand in his pocket. Richard had nothing in his hand. Mrs. Kirby asked the defendant to leave, falsely telling him that she had called the police. Richard asked the defendant what he thought he was pulling. Defendant responded he was tired of everybody using him. At this point Mrs. Kirby warned her son that defendant had something in his pocket. Richard turned his head and looked at her and as he did so the defendant took a knife out of his pocket and stabbed Richard in the chest. Richard walked upstairs and the defendant left after being told to do so several times by Mrs. Kirby. Richard returned with a gun which Mrs. Kirby kept hidden in a bowl in her kitchen cabinet. Richard fired the gun once down the street and fell. Mrs. Kirby took the gun from him and went upstairs to call an ambulance. After she called she noticed a baseball bat leaning against a chair in the kitchen, next to the cabinet where the gun was kept. There was blood all over the house, including on the kitchen cabinet and the bat. Later Mrs. Kirby went to the hospital, where she observed that her son Richard was dead. A pathologist testified that the cause of death was a stab wound of the chest, causing a laceration of the heart.

Detective Eugene Siedlecki of the Cicero police arrived at the scene as the victim was taken away in an ambulance. He observed a trail of blood leading up the stairs and into the apartment. There was blood in the kitchen, including on a baseball bat which was leaning against a chair about one foot away from a cabinet. Detective Siedlecki recalled that Mrs. Kirby told him defendant had pushed Richard with his hand, Richard then took a swing at the defendant and the defendant reached into a pocket and removed a knife with which he stabbed Richard. The detective personally noticed no injuries to the defendant, but on the information of another police officer he noted in his police report that defendant had abrasions to his hands.

It was stipulated at trial that the defendant and Richard both had Type O blood, which was also the blood type of the blood on the baseball bat.

The defendant testified that sometime between eight and ten that evening he had been involved in a fight with a number of people. Richard was there but he never struck the defendant, nor did he come to his aid. Later that evening, from his home, defendant called Richard twice. The second time he asked Richard to help straighten out what happened earlier that night because Richard was the leader of the Dukes. Richard told him this was "between you and them." Defendant then walked seven or eight blocks to Richard's house to talk with him. Mrs. Kirby was in front of the building and she warned him she had called the police. Defendant told her he just wanted to talk with Richard. At that point

Richard rushed out of an adjacent alley and began striking the defendant with a baseball bat. Defendant then recalled that he had in his pocket a paring knife which he had been using about 5 p.m. that day to cut up cardboard boxes in his home. He pulled out the knife but Richard kept hitting him with the bat. Defendant grabbed the bat, pulling Richard off-balance and onto the knife. Richard ran upstairs, yelling that he was going to get a gun. Defendant gave the bat to Mrs. Kirby. She told him to leave before defendant came back downstairs, so he ran. Defendant corroborated police testimony that when he called his home and learned the police were there he turned himself in along with the knife, but he denied that the knife produced at trial was the one he had used. He also denied that when he went to the apartment he knew he had the knife in his pocket, maintaining that he had forgotten about the knife until he was attacked.

Also testifying for the defense was the attorney who first represented the defendant the day he was charged with the murder. He testified that on the morning after the occurrence he noticed that defendant's left hand and wrist were swollen.

On rebuttal a State witness testified that he was present at about eight that evening when a fight broke out between defendant and another boy. Punches were exchanged and defendant was kicked in the face, arms and legs. Fifteen minutes later another fight broke out involving defendant in which he was again kicked until Richard Kirby broke it up. Apparently in response to defendant's allusion to the Dukes, this witness testified that the Arch Dukes were a softball team of which Richard was a member. On surrebuttal the defense produced a witness who testified that at about eight that evening, after defendant complained to him of having been struck about the face, he warned the defendant not to become a member of what he characterized as the "Arch Dukes gang."

■■■ This evidence raised the issue of the affirmative defense of self-defense and therefore it was the burden of the State to prove beyond a reasonable doubt defendant's guilt as to that issue along with the other elements of murder or voluntary manslaughter. (Ill. Rev. Stat. 1973, ch. 38, par. 3—2; *People v. Harling* (1975), 29 Ill. App. 3d 1053, 331 N.E.2d 653.) Here the essential conflict on the crucial disputed issue of self-defense was between the testimony of the defendant and that of Mrs. Kirby. Defendant concedes that ordinarily this question would be for the trier of fact. (*People v. Henderson* (1965), 33 Ill. 2d 225, 210 N.E.2d 483; *People v. Howard* (1976), 42 Ill. App. 3d 81, 355 N.E.2d 543.) But it is defendant's contention that certain additional evidence corroborated his testimony, thereby making the evidence against him so improbable or unsatisfactory as to create a reasonable doubt of his guilt. *People v.*

*Jordan* (1960), 18 Ill. 2d 489, 165 N.E.2d 296; *People v. French* (1972), 3 Ill. App. 3d 884, 279 N.E.2d 519.

Defendant first refers to the blood-stained baseball bat found in the Kirby's apartment. Although this could be found to corroborate defendant's testimony that he was attacked with a bat, it could also be construed to corroborate Mrs. Kirby's testimony. She stated that the bat was located next to the kitchen cabinet where her gun was hidden. Detective Siedlecki also testified that there was blood on the kitchen floor as well as on a bat next to a kitchen cabinet. Thus, this blood, the type of which matched both the defendant and Richard Kirby, could have come from Richard as he sought the gun after being stabbed. In the same manner the testimony concerning injuries to defendant's hands, which he claims corroborates his testimony about Richard's attack on him, could also have resulted from the fight or fights in which he was admittedly engaged earlier that evening. The interpretation of this evidence ultimately relates back to the evaluation of the credibility of the key witnesses, an evaluation which is not the function of this court where the determination of the jury is a reasonable one, as is the case here.

For the reasons stated the judgment of the trial court is affirmed.

Affirmed.

JOHNSON, P. J., and LINN, J., concur.