(No. 42033.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
OLIVER WILSON, Appellant.

*Opinion filed September 29, 1970.*

Ward, J., took no part.

Gerald W. Getty, Public Defender, of Chicago, (Ronald P. Katz, and James J. Doherty, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, and Robert A. Novelle, and Patrick T. Driscoll, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Burt delivered the opinion of the court:

This case comes before us upon this court's granting of defendant's petition for leave to appeal from the judgment of the Appellate Court, First District, Second Division. The appellate court (105 Ill. App. 2d 216) affirmed a judgment of conviction of the defendant after a jury trial, for the unlawful possession of narcotic drugs, with a sentence to the Illinois State Penitentiary for a term of not less than seven nor more than ten years.

On March 9, 1965, defendant, Oliver Wilson, was charged in the circuit court of Cook County with both the sale and unlawful possession of narcotics. Two detectives approached Sam Jackson, a known addict, to act as an informant. Sam Jackson was taken to police headquarters at 11th and State where he was searched and handed pre-recorded and fluorescent dusted currency, the type used in a controlled sale. One of the detectives later testified that the informer then called the apartment at 4946 South State

Street where defendant answered the telephone, and the listening police officer recognized defendant's voice from prior contacts with defendant. The informer was taken to 4946 South State Street. He entered the building and returned some ten minutes later with a tinfoil package which he handed to the officers. At approximately 1:30 A.M., an hour later, said detectives returned to the apartment building at 4946 South State Street in the company of policewoman Nora Scannell, who was summoned because the informer, Jackson, told them that there were women present in the apartment. The officers first attempted to break into the apartment. Subsequently, defendant, dressed in a T-shirt, pants and socks, opened the door and admitted the officers. They placed defendant under arrest. Others present in the apartment were defendant's sister, Marybell Wilson, her five children, defendant's common-law wife, Nadine Clay, Jackie Miller, a guest at the apartment, and Carolyn Branch. Nadine Clay and Jackie Miller were arrested with defendant and taken to the 11th Street station. Jackie Miller was released at the station and Nadine Clay was discharged at a preliminary hearing.

Policewoman Nora Scannell testified that except for defendant's sister, three of the women in the apartment had track marks on their arms. The apartment was subsequently searched, and a bag containing narcotics was found in a kitchen drawer by one of the detectives.

The trial court allowed the jury to hear testimony regarding the packaged narcotics found in the apartment and the package allegedly obtained from the sale. At the close of the State's case, only the package of narcotics found in the apartment was admitted into evidence. The defense counsel moved for a mistrial contending that evidence regarding the sale of narcotics related to a different transaction than the possession charge, pointing out that the sale occurred a full hour prior to the seizure of the narcotics. The trial court denied the motion.

At the trial the defendant testified that on March 8, 1965, he lived at 7833 Emerald Avenue, and that he and the informer, Sam Jackson, were addicts and had used narcotics in the past. Defendant further testified that when Jackson first entered the apartment, Jackson told him he was sick and needed narcotics and that defendant replied that he had none. The defendant testified that Jackie Miller was the one who gave Jackson the narcotics.

Marybell Wilson, the defendant's sister, testified at the trial that she had leased the apartment from the Chicago Housing Authority with her five children, and that the defendant did not reside there. She further testified that Jackie Miller was spending a few days with her as her guest. Defendant's common-law wife, Nadine Clay, testified that at the time of defendant's arrest he was living with her at 78th Street and Emerald Avenue.

Officer Walsh stated that the window in the bedroom was open and that beneath the window, on the ground level, they recovered another plastic bag, a needle, and syringe and two tinfoil packets which contained white powder. Also he testified that the predusted currency was found beneath said window on the ground floor. Officer Walsh testified that defendant's shirt, coat, hat, and shoes were found at that time in the bedroom. Officer Walsh also testified that the fluorescent powder which had been on the marked currency showed up on defendant's hands when put under the fluorescent light at the police station.

During final argument, the prosecutor stated, "I suggest that you do what Mr. Georges said that you do; fix the standards in this community and let people like Oliver Wilson know he is not going to be a link in the distribution of narcotics in this community. Being an addict may mitigate him, but being an addict-pusher——." At that point the defense counsel stated, "He is charged with possession only. Mr. Genesen is trying to inflame the jury that he is a big seller of some sort. I think it is highly irregular." The

prosecutor stated, "I object to the speech." The court over-ruled the objection, and directed the prosecutor to continue. In final argument, the prosecutor also said, "As a matter of fact we offered People's Group Exhibit 3 for identification into evidence and the court disallowed it, which was the evidence of the sale. You have heard testimony about it, but the actual subject matter of it is not the contest we have here today."

The defendant now contends: (1) It was prejudicial error for the trial court to admit testimony of defendant's involvement in other crimes; (2) it was error for the appellate court to conclude that it was proper for the prosecutor to present to the jury physical evidence of other crimes allegedly committed by the defendant where the trial court subsequently refused to admit such physical objects into evidence; (3) it was error for the appellate court to rule that it was proper for the prosecutor in a possession-of-narcotics prosecution to comment that the defendant was an addict-pusher, and was involved in the distribution of narcotics in the community, and (4) the evidence presented by the prosecution failed to establish beyond a reasonable doubt that the narcotics were either actually or constructively possessed by the defendant.

As to defendant's contention that the testimony of defendant's involvement in the sale of narcotics was errone-ously admitted, we agree with the holding of the appellate court that such evidence was admissible as an exception to the exclusionary rule forbidding the admission of evidence of a crime independent of and disconnected from the one for which defendant is charged. Evidence, relevant to the main issue, which serves to place the defendant in proximity to the time and place, aids or establishes identity, and tends to prove design, motive, or knowledge is admissible. (*People* v. *Tranowski*, 20 Ill.2d 11.) In each case it must be determined from the facts as to whether the evidence of other

crimes is so closely connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried. (*People* v. *Tranowski,* 20 Ill.2d 11.) The appellate court correctly noted that defendant's defense was that he had no knowledge or control of the narcotics, and the evidence of the sale was, therefore, admissible to show defendant's knowledge, motive, and intent in the possession of narcotics. Therefore, the evidence of the other crime of sale of narcotics was needed to refute the defendant's contention that he had no knowledge of the narcotics that were found in the apartment and that they belonged to one of the other adults present.

The defendant contends that it was error for the appellate court to conclude it was proper for the prosecutor to present to the jury physical evidence of the sale of narcotics, where the trial court subsequently refused to admit such physical objects into evidence. Here again, the rule laid down in *Tranowski* controls and the appellate court correctly noted that relevant evidence of another crime, which places the defendant in proximity to the time and place and which aids identification or which tends to prove design, motive or knowledge, is admissible.

Defendant further contends that it was improper for the prosecutor in a possession-of-narcotics prosecution to comment that the defendant was an addict-pusher and was a link in the distribution of narcotics. The appellate court correctly noted that the comments were based on properly admitted evidence. The sale was relevant and closely related to whether or not defendant had knowledge and control of the narcotics found in the apartment. The argument by the State was proper in this case to refute the defendant's claim of ignoreance about the narcotics seized in the apartment. In narcotics cases, the prosecution may meet its burden of proving the knowledge essential to a conviction for possession by evidence of acts, declarations or conduct

of the accused from which the inference may be fairly drawn that he knew of the existence of the narcotics at the place they were found. (*People* v. *Mack*, 12 Ill.2d 151.) Moreover, the defendant, through privately retained counsel, did not object to the prosecutor's statement at the trial. Therefore, because we believe hat the comments did not deprive defendant of a fair trial, the alleged errors in the argument of counsel, if any, have been waived. *People* v. *Carter*, 9 Ill.2d 31. *People* v. *Donald*, 29 Ill.2d 23.

Defendant contends that it was not proved beyond a reasonable doubt that the narcotics were either actually or constructively possessed by the defendant. After reviewing the entire record, we find that there is sufficient credible evidence to prove the defendant guilty of narcotics possession beyond a reasonable doubt. The jury has apparently accepted the prosecutor's evidence that the defendant answered the telephone when the informant called the apartment; that the defendant sold the informant a packet of heroin in the apartment; that the defendant's shirt, coat, hat, and shoes were in a closet in the back bedroom; and thus the defendant had at least a joint control and possession of the narcotics found in the apartment. Therefore, we will not interfere with the jury's findings that the defendant was proved to be in possession of the narcotics beyond a reasonable doubt.

The holding of the case of *Chimel* v. *California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034, should not be applied retroactively to hold that the search without a warrant of the apartment where defendant was arrested was unreasonable. The search in the instant case took place March 9, 1965, and the *Chimel* case was not decided until June 23, 1969. It would be a great hardship in the administration of criminal justice to hold that said case should be given retroactive effect. It would not serve the purpose of justice to apply that decision retroactively because, with the ever changing standards in the administration of criminal

justice, the law enforcement authorities should be able to rely on the standards as interpreted and in effect at the time of the arrest.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.