(No. 45215.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PHILLIP MANZELLA, Appellant.

*Opinion filed Nov. 30, 1973.—Rehearing denied Jan. 29, 1974.*

Harry H. Busch and Patrick A. Tuite, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, and Kenneth L. Gillis and Mariann Twist, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

This is a direct appeal from the circuit court of Cook County, which, after a jury trial, adjudged the defendant, Phillip Manzella, guilty of the murder of his two sisters-in-law, Colleen Mulcahy and Claudia Daubenspeck, and of the attempted murder of his former wife, Candace Mulcahy Shell. Pursuant to the jury's recommendation, the trial court sentenced the defendant to death for the murders, and to a term of years in the Illinois State penitentiary for the attempted murder, the minimum of which is conflicting in the common-law record, wherein it

is recited to be from 10 to 20 years, and in the report of proceedings, wherein it is recited to be from 15 to 20 years.

The judgment below must be remanded because of the imposition of the death sentence. In accordance with the determination of the United States Supreme Court (*Furman v. Georgia (1972), 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726; Moore v. Illinois (1972), 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562*) that the death penalty which juries are authorized to impose in capital cases under statutes such as those in Illinois is violative of the Constitution of the United States, we have affirmed the convictions, but vacated several such sentences and remanded the causes to the various circuit courts with directions to conduct a hearing in aggravation and mitigation, and to resentence the defendant to a sentence other than death. (*People v. Speck (1972), 52 Ill.2d 284; People v. Newbury (1972), 53 Ill.2d 228; People v. Clark (1972), 52 Ill.2d 374.*) We likewise so direct in this case.

However, in addition to remanding for resentencing, we also find it necessary to consider certain errors that were allegedly committed during trial which the defendant contends require reversal. We disagree.

To more fully understand these errors, it is necessary to review the pertinent facts as adduced at the trial. The defendant's former wife, Candace, testified that on December 4, 1967, the defendant, Phillip Manzella, rang the doorbell of her apartment; that she was still awake and was watching television with her sisters, Claudia and Colleen; and that after she looked out the front window and recognized the defendant's car, the women decided to let him into the apartment, believing that because of their number, they were safe. Before entering the apartment, however, Candace searched the defendant's pants and coat pockets for a weapon, and found none.

After admitting him to the apartment, the three women went into the kitchen with the defendant where

they had a conversation with him concerning his statements that Colleen was on dope and smoking marijuana at the school she attended. After ten minutes of this conversation, Claudia ordered the defendant out of the house and told him that he should never return. He agreed to leave, but before doing so, he turned and said: "But before I go, I've got something for you," and then shot Claudia, Colleen and Candace. The shots killed Claudia and Colleen immediately, but Candace was neither killed nor rendered unconscious. She recognized muffled sounds as footsteps coming towards her, and then before losing consciousness, felt a heavy object pounding on her head.

When Candace revived, she saw her sisters lying on the floor motionless. She arose and made her way to the front door, tried to get out, and discovered that the key needed to unlock the door was missing. She then became aware of somebody standing behind her, and when she turned, saw the defendant holding a knife that had been hanging in the kitchen. Manzella attempted to stab her; she tried to push him away but instead fell to the floor. The defendant then stabbed her in the back and she again lost consciousness.

When she regained consciousness she realized she was very weak and could barely breathe. Despite great difficulty in walking, she made her way to her mother's bedroom. She turned on the light and said to her: "Where is he?" Her mother, being deaf, had slept through the shooting and screaming. When her mother answered "Where is who?" Candace said, "Phil, he killed them."

Candace became frightened at the thought that Manzella might still be in the house, and she went into another bedroom and shut the door. Her mother got up to go after her, but then noticed her grandson and little granddaughter going into the kitchen. She thought that the defendant might still be in the house so she took the grandchildren with her to the bedroom where Candace was. Candace unlocked the door to let them in, then went into the closet to hide. However, her mother helped her

out and onto the bed. Candace then called the telephone operator and related what had happened. Her mother noticed the knife protruding from Candace's back and was able to pull it out. She recognized the knife, even with the handle broken off, as having come from her kitchen set.

Candace met the first policeman to arrive at the door. He observed her bleeding from the head and back, and saw the two bodies lying in the kitchen with blood issuing from the head of each. Candace was then removed to the hospital.

Additional testimony on direct examination of Candace elicited that there had been a series of incidents following her divorce in which the defendant had harrassed her by following her, physically abusing her, and attempting to frighten her. She also testified that in mid-July of 1967 he entered her home at 2 A.M., wearing a disguise and claiming to be a killer hired by Phillip Manzella to shoot his ex-wife; that the disguise was so poor that the entire family recognized the intruder as the defendant, Manzella; that nevertheless, he kept the family at bay for two hours with a snub-nose revolver; that after he left, the police were called; and that charges, which were filed three days later, were eventually dropped.

She also described another occurrence which took place about a month before the shooting incident out of which the murder charges arose, at which time she and the defendant got into an argument in a lounge and at which time he punched her girl friend, Arlene Soper Niemiec, in the jaw, and subsequently hit Candace and knocked her down. The girl friend also testified relative to that incident.

The defendant testified in his own behalf and denied that he had been in his former wife's apartment on the night of December 4, 1967. He asserted that he went to Wisconsin and Minnesota that night to look at land and learned of the deaths on his return; and that he then went to Mexico because he thought the Chicago police were going to kill him. He denied all the material statements

made by the State's witnesses, and stated that Candace lied when she said she saw the defendant with a gun in July 1967; that Dominic Romano lied when he said he saw him with a gun in December 1969; that Richard Niemiec lied when he said he saw the defendant with a gun in the middle of November 1967; that Diane Drobut lied when she said she met the defendant on December 4, 1967; that officer Vaquez lied when he said the defendant tried to escape from jail, and that Arlene Niemiec lied when she said the defendant had slapped her. However, he admitted that he lied to custom officials about his true identity.

The court instructed the jury that the "State is not required to prove a motive for the commission of the crime charged." Defense counsel at first objected to this instruction but then acceded to it on condition that the prosecutor not argue motive to the jury. The prosecutor nevertheless commented on the July 1967 incident which was not closely connected in point of time with the events of December 1967, which give rise to this proceeding.

The first of the three errors which the defendant urges was that he was denied his right of cross-examination when the court sustained the State's objection to the defense questions seeking the address of the witness, Diane Drobut. Diane testified that she met with the defendant and Louie Havier on December 4, 1967 and that she had spoken with the defendant's attorney outside the court-room prior to her testimony.

In the case at bar, there was no showing of personal danger to the witness, Diane Drobut, whose address was asked. In fact, the State established on redirect examination that there was no danger to her personal safety. The record indicates that the testimony of this witness was of a noncritical character, and additionally, in view of the relationship between the defendant and the witness, any claim that the denial of information concerning her address deprived the defendant of investigation apparently is without merit.

The record reveals that defense counsel was allowed to

question Diane Drobut with reference to her place of employment; where she had lived prior to going to Mexico; with whom she lived while in Mexico; and why she left the person with whom she was originally staying there. From the answers to these questions, the jury learned that she had worked at a restaurant in the Executive House; that she had lived at home, but stayed with Louie Havier a couple of times at the Southwest Inn; that she lived with the defendant for about a month in Mexico; that she left Havier and went to live with the defendant when the defendant told her that Havier was going to put her "on the white slave market"; and that she was testifying because she was subpoenaed.

It thus appears that the court allowed the defendant to cross-examine Diane Drobut on a wide spectrum and that he was not thwarted in his in-court examination or out-of-court investigation.

It is well established that the address of a witness must be given on inquiry, unless to do so would jeopardize the personal safety of the witness. (*Alford v. United States (1931), 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 218; Smith v. Illinois (1968), 390 U.S. 129, 19 L. Ed. 2d 956, 88 S. Ct. 748.*) In *Smith,* the court, in considering this issue stated:

> "Yet when the credibility of a witness is an issue, the very starting point in 'exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." (390 U.S. at 131.)

Also see: *United States v. Palermo (7th Cir. 1969), 410 F.2d 468,* and *United States v. Varelli (7th Cir. 1969), 407 F.2d 735,* where in both instances the court held that the

address of a witness should have been disclosed. However, in the light of the circumstances in this case, we believe that the ruling of the trial court in sustaining this objection was harmless beyond a reasonable doubt. There is no showing in the record of any prejudice to the defendant because of this ruling.

At the time the police were conducting their investigation into the murder, and preserving evidence, the defendant was meeting with Diana Drobut and Louie Havier, and the three of them drove immediately to Mexico City. Miss Drobut testified that Manzella was introduced to her as "Ken Oligney"; that she learned who he was after crossing the border; and that she lived in Mexico with him for about a month before she returned to the United States and she visited him at the Cook County jail at his mother's request. When Diane Drobut was asked her address on cross-examination, the State's objection to the question was sustained. On redirect examination by the State, it was established that the witness was not in fear for her safety.

The second error asserted by the defendant was the introduction of evidence of prior and distinct offenses committed by the defendant. The State contends that this evidence was proper to show malice, motive and intent on the part of the defendant. We note that defense counsel failed to object to the introduction of this evidence during the trial, and normally this would preclude raising this objection on appeal. (*People v. Thompson* (1971), 48 Ill.2d 41, 45-46; *People v. Wilson* (1970), 46 Ill.2d 376, 382.) However, where the magnitude of the error may result in substantial prejudice to the right of the defendant to a fair trial, we have nevertheless on proper occasions considered the error as though it had been properly preserved for appeal.

Supreme Court Rule 615(a) (50 Ill.2d R. 615(a)) provides:

> "*Insubstantial and Substantial Errors on Appeal.* Any error, defect, irregularity, or variance which does not

affect substantial rights shall be disregarded. Plain errors
or defects affecting substantial rights may be noticed
although they were not brought to the attention of the
trial court."

In view of this rule, we will consider the second alleged
error urged herein, even though no objection was raised
thereto at the trial.

The rule of evidence which precludes the introduction
of evidence concerning offenses other than that for which
an accused is being tried is fundamental to a fair trial. This
rule requires no further elaboration. It is true, nevertheless,
that evidence relevant to the main issue, and which serves
to place the defendant in proximity to the time and place
of the offense and which aids or establishes identity, and
tends to prove design, motive, or knowledge, is admissible
as an exception to the general exclusionary rule barring
such evidence. (*People v. Wilson (1970), 46 Ill.2d 376;
People v. Dewey (1969), 42 Ill.2d 148.*) In *Dewey*, at page
157, we stated:

> "The defendant next contends that the trial
> court erred by allowing the introduction of
> evidence that defendant attempted to pick up
> girls of the same age as Susan Brady in his car on
> prior occasions. It is argued that such testimony
> of misconduct with other young girls deprived the
> defendant of his constitutional right to presump-
> tion of innocence. Evidence which tends to prove
> a fact in issue is admissible even though it
> discloses that the defendant committed another
> crime, and evidence which establishes motive,
> intent, identity, accident or absence of mistake is
> admissible even though it may also involve proof
> of a separate offense."

Thus, prior assaults on Candace by defendant and prior
threats against her and Claudia by the defendant were
relevant to the offenses at issue, as tending to throw light
on the intention of the defendant. Also, the evidence of
the battery committed on Candace by the defendant went

to the issues of malice and criminal intent and such evidence was admissible against him.

The incidents in question were not so remote as to make them inadmissible. In *People v. Griswold (1950), 405 Ill. 533,* this court held that an occurrence many months prior in time was not too remote. Also, evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit the crime. *People v. Cole (1963), 29 Ill.2d 501, 503.*

In *People v. Wilson (1970), 46 Ill.2d 376,* at pages 380 and 381, this court stated: "In each case it must be determined from the facts as to whether the evidence of other crimes is so closely connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried. *(People v. Tranowski, 20 Ill.2d 11.)* The appellate court correctly noted that defendant's defense was that he had no knowledge or control of the narcotics, and the evidence of the sale was, therefore, admissible to show defendant's knowledge, motive, and intent in the possession of narcotics. Therefore, the evidence of the other crime of sale of narcotics was needed to refute the defendant's contention that he had no knowledge of the narcotics that were found in the apartment and that they belonged to one of the other adults present."

With respect to the defendant herein, however, proof of his various acts months prior to the shootings for which he was being tried went to the issues of malice, motive and criminal intent, which are elements of the crime of murder. *People v. Dewey (1969), 42 Ill.2d 148.*

In *People v. Dampher (1963), 28 Ill.2d 136,* at page 138, this court stated:

> "The malice which is an essential element of the crime of murder may be express or implied. Malice will be implied if, at the instant of the assault, the accused is actuated by a wanton and reckless disregard of human life."

Prior assaults on the victim also have been held to be

relevant. (*People v. Griswold (1950), 405 Ill. 533.*) The break into Candace's home in July, 1967, was admissible evidence as tending to throw light on the intention of the defendant. (*People v. Rongetti (1930), 338 Ill. 56.*) The acts of the defendant on December 3, 1967, when the three women were shot, speak adequately for themselves. As the court stated in *People v. Lehman (1955), 5 Ill.2d 337, 342:* "Evidence of other crimes is objectionable 'not because it has no appreciable probative value, but because it has too much.' (1 Wigmore, Evidence (3d ed. 1940), sec. 194.) The law distrusts the inference that because a man has committed other crimes he is more likely to have committed the current crime. And so, as a matter of policy, where the testimony has no value beyond that inference, it is excluded."

We conclude, therefore, that the proof of other acts in the nature of criminal offenses was introduced by the State to show the defendant's malice toward Colleen Mulcahy, Claudia Daubenspeck and Candace Mulcahy Shell, and to show his criminal intent. Such evidence was competent, and it was not error to admit it.

The defendant urges finally that giving the instruction on motive, which reads: "Motive is that which prompts a person to act. The State is not required to prove a motive for the commission of the crime charged," constituted a third trial error; that it is particularly so in view of the fact that the prosecutor commented in final argument on motive, contrary to the I.P.I. Committee Note which reads: "See *People v. Dore, 339 Ill. 415, 419-420, 171 N.E. 554, 556 (1930); People v. Corder, 306 Ill. 264, 267, 137 N.E. 845, 847 (1923); People v. Enright, 256 Ill. 221, 233-235, 99 N.E. 936, 941 (1912).* However, in the *Enright* case the Illinois Supreme Court observed (256 Ill. at page 234, 99 N.E. at page 941), 'If the People claim that a motive existed inducing the commission of the act it must be proved, and, like any other circumstance, cannot be inferred ***.' Accordingly, if the People adduce

evidence tending to prove a motive and the prosecutor argues the circumstance of motive to the jury, this instruction should *not* be given." (Ill. Pattern Jury Inst.–Criminal, No. 3.04 (1968).) By virtue of the substance of the Committee Note, the defendant argues that the instruction should not have been given.

In *People v. Enright (1912), 256 Ill. 221,* at 234, the court stated: "In a criminal prosecution the People are required to prove the commission of an act forbidden by the law and to prove it beyond a reasonable doubt, but they are never required to prove a cause or reason that induced the accused to commit the act if without such proof the evidence is sufficient to show that the act was done by him. If the accused committed the act, the question whether he had a motive, or what it was, is immaterial. Evidence tending to show the existence or non-existence of a motive is admissible and is frequently important to be considered in connection with the other evidence in the case, and although the People are under no obligation to show a motive for the commission of a criminal act they may do so. If the People claim that a motive existed inducing the commission of the act it must be proved, and, like any other circumstance, cannot be inferred, but as they are not required to show any motive a jury should not be informed that failure to show it tends to prove that the crime was not committed."

The instruction in question accurately stated the law, and had the State not introduced proof of acts and offenses of the defendant from which motive or intent could be inferred the instruction would have been proper. The prosecutor's comment during final argument on the defendant's motive, as exhibited in the proof of his other offenses, was improper, since use of the instruction is intended where the State has not attempted to prove motive. Comment by the State on the motive which caused the defendant to commit the offenses was obviously improper and constituted error.

The trial of the case at bar was a long one which was hotly contested and tempers ran high. When we consider all the circumstances of this case, we find that the record is free from reversible error.

While an accused is entitled to a fair trial and his rights must be zealously guarded by court and counsel, a reversal is not indicated because of some error during the trial unless it reasonably appears that the jurors, or at least some of them, have been influenced or prejudiced to the extent that they cannot be fair and impartial. (*People v. Malmenato (1958), 14 Ill.2d 52, 65.*) In the case at bar, the evidence against the defendant was overwhelming.

In *People v. Murphy (1916), 276 Ill. 304,* in considering the matter of trial errors and reversals therefor, this court stated at page 324: "Plaintiff in error could not reasonably expect another or different verdict at the hands of another jury. It should not be and is not the policy of this court to reverse a judgment merely because error has been committed, unless it appears that real justice has been denied thereby or that the verdict of the jury or the judgment of the court may have resulted from such error. There is no such showing in this record, and the judgment of the circuit court is affirmed."

Therefore, the judgment of conviction of the defendant is affirmed, and the cause is remanded for resentencing the defendant to a sentence other than death on the murder charges, and to resolve the conflict which appears in the common-law record and report of proceedings herein with reference to the minimum sentence of the defendant on the attempted-murder charge and to enter an appropriate sentence on the attempted-murder charge.

*Affirmed and remanded, with directions.*