THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HELEN McCULLUM, Defendant-Appellant.

(No. 73-118; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮)

Third District—October 23, 1975.

*Modified upon denial of rehearing December 15, 1975.*

Ackerman, Durkin & Egan, of Chicago (Alan Ackerman, of counsel), for appellant.

Martin Rudman, State's Attorney, of Joliet (Ira Goldstein, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the Court:

Following a bench trial, defendant was convicted of possession of over 30 grams of heroin in violation of section 402 of the Illinois Controlled Substances Act (Ill. Rev. Stat., ch. 56½, § 1402) and sentenced for a term of 3 to 6 years in the penitentiary. Defendant appeals from the conviction.

Defendant was arrested on August 3, 1972, when law enforcement officers seized a quantity of heroin during a search of her home conducted pursuant to a search warrant, and she was later indicted for possession with intent to deliver. Before trial the court denied defendant's motion to quash the search warrant and to suppress physical evidence, and dismissed her petition for treatment as a narcotic addict in lieu of prosecution. After defendant waived her right to a jury, the trial began February 20, 1973. On the third day of trial, the defendant's attorney requested a hearing to determine defendant's fitness to stand trial because she was falling asleep in court and thus was unable to assist in the defense of her case. The trial on the criminal charge was recessed; a jury was empaneled; and a fitness hearing was held. The evidence indicated that defendant was receiving methadone as treatment for heroin addiction. After the jury found defendant fit to stand trial, the bench trial was resumed, and defendant was found guilty of possession, a lesser included offense within the charge of possession with intent to deliver.

Numerous questions are presented on appeal, and additional facts will be supplied as necessary to the discussion of each issue.

I. *The Search Warrant*

■■ Defendant contends that the trial court erred in refusing to quash the search warrant and to suppress the physical evidence seized.

At the hearing on defendant's motion to quash, the Illinois Bureau of Investigation agent who obtained the search warrant testified that, before the judge issued the warrant, he read the agent's complaint and asked some questions relating to the content of the complaint. The agent could not recall what questions were asked or whether he was under

oath at the time. Defendant argues that all evidence of probable cause must be incorporated in the written complaint for a warrant and that unrecorded and unsworn oral statements made by the complainant may not be the basis for issuance of the warrant.

In *People v. Bak*, 45 Ill.2d 140, 144, 258 N.E.2d 341, 343, *cert. denied*, 400 U.S. 882, 27 L.Ed.2d 121, 91 S.Ct. 117 (1970), the constitutional requirement for issuing a search warrant was stated to be "that a judicial officer find probable cause  *  *  *  based on the evidence under oath that has been presented to him by the one requesting the warrant." In challenging the search warrant, defendant has the burden of proof. Ill. Rev. Stat., ch. 38, § 114—12(b).

In the case before us, the verified complaint for a search warrant established probable cause, and the fact that additional oral statements of undisclosed nature were made to the issuing judge cannot invalidate the warrant, in the absence of any evidence that the judge relied on such statement when he determined the sufficiency of the complaint.

We therefore find that the evidence in the record supports the trial court's conclusion that the issuance of the search warrant complied with the law.

■■ Defendant also points out that the address and description of the premises to be searched were on a slip of paper taped to the search warrant. Since, according to the uncontradicted evidence, the address was affixed prior to the time the judge signed the warrant, no error is shown concerning the description of the premises.

Defendant next alleges, as grounds for quashing the search warrant, that the failure of police officers to give her a copy of the warrant until eight days after the search was fatal to the search and seizure of evidence. Section 108—6 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat., ch. 38, § 108—6) provides that a search warrant must be executed within 96 hours after issuance, and that, if it is executed, the duplicate copy shall be left with any person from whom things are seized. In this case the search warrant was issued at 4:40 p.m. on August 3, 1972; the search occurred at 11:15 p.m. the same day; and defendant was given a copy of the warrant on August 11, 1972.

■■ Defendant concedes that failure to serve the warrant at the time of the search is not alone sufficient to invalidate the search (*People v. Curry*, 56 Ill.2d 162, 306 N.E.2d 292 (1973)), but argues that the late service, taken with the other alleged errors connected with issuance of the warrant, should have been sufficient to quash the warrant and suppress the evidence seized. Since none of the other defects alleged were in fact error, and, since no claim of prejudice is made, the search was

not invalidated by failure to furnish defendant a copy of the warrant prior to the search. See *Katz v. United States*, 389 U.S. 347, 19 L.Ed.2d 576, 88 S.Ct. 507, 513 (1967); 68 Am. Jur. 2d *Searches and Seizures* § 115 (1973).

We must also consider section 108—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat., ch. 38, § 108—14), which provides:

"No warrant shall be quashed nor evidence suppressed because of technical irregularities not affecting the substantial rights of the accused."

We do not intend to condone disregard for statutory mandates designed to protect the basic constitutional right to be free from unreasonable searches and seizures. Nevertheless, a search otherwise proper will not be invalidated for failure to comply with statutory requirements concerning steps to be taken after the warrant has been executed.[1] *People v. Hawthorne*, 45 Ill.2d 176, 258 N.E.2d 319 (1970).

II. *The Fitness Hearing*

We must next determine whether, during the fitness hearing, the court correctly instructed the jury that defendant had both the burden of going forward with evidence of unfitness and the burden of proving her unfitness to stand trial by a preponderance of the evidence. Section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat., ch. 38, § 1005—2—1), effective January 1, 1973, provides in part:

"(i) The burden of proving the defendant is not fit is on the defendant if he raises the question and on the State if the State or the court raises the question.

(j) The party raising the question has the burden of going forward with the evidence. If the court raises the question, the State shall have the burden of going forward with the evidence."

Defendant contends that placing the burden of proving unfitness on defendant is an unconstitutional deprivation of due process. It is not disputed that State procedures must be adequate to protect the constitutional right of a defendant not to be tried and convicted while he is incompetent. (*Pate v. Robinson*, 383 U.S. 375, 15 L.Ed.2d 815, 86 S.Ct. 836 (1966).) However, we must first decide whether section 5—2—1 applies to this case.

In *People v. Bender*, 20 Ill.2d 45, 169 N.E.2d 328 (1960), a case where

---

[1] In stating this rule, Illinois courts have referred to steps to be taken after the warrant has been "served". (*People v. Hawthorne* and cases cited therein.) However, "serving" a search warrant is synonymous with "executing" the warrant, and is to be distinguished from service of civil process. 68 Am. Jur. 2d *Searches and Seizures* § 107 (1973).

defendant raised a sanity[2] hearing, the Illinois Supreme Court stated:

"The instructions in the present case correctly state that the issue of insanity was to be resolved by a preponderance of the evidence. However, these instructions informed the jury that the burden of proving defendant's insanity rested upon the defendant. As we have observed, in the trial of a criminal case the burden is upon the State to prove defendant's sanity. We see no reason why the burden of proof should shift to the defendant in a pretrial sanity hearing. The test of sanity at such a hearing is whether the defendant understands the nature of the charges against him and whether he can co-operate with his counsel and conduct his defense in a rational and reasonable manner. [Citation.] Let us assume that defendant is in fact unable to co-operate with counsel and present his case in a rational manner. It would be a strange rule, indeed, to impose upon him the burden of proving his own incompetence, for the very disability which he would be seeking to prove renders him incapable, either logically or legally, of sustaining the burden of proof." (20 Ill.2d 45, 53-54.)

Accord, *People v. McKinstray*, 30 Ill.2d 611, 198 N.E.2d 829 (1964).

The statute which preceded the Unified Code of Corrections (Ill. Rev. Stat. 1971, ch. 38, § 104—2(c)) provided that the burden of going forward with evidence of defendant's incompetency was on the party requesting the determination, but contained no provision for burden of proof. *Bender* and *McKinstray* thus established that burden of proof of fitness was on the State even in those cases where defendant raised the question.[3]

The State argues that the section 5—2—1 should govern here since the question of defendant's fitness was not raised until after the effective date of the new Code. We note with interest that the trial court confronted the same problem when defendant asked for a jury to determine her fitness. Section 5—2—1(d) provides that the question of fitness shall be determined by the court when raised after commencement of the trial. Under the previous statute (Ill. Rev. Stat. 1971, ch. 38, § 104—2(a)), in such a situation, the defendant was entitled to a jury, and the right to a jury determination has been held to be a constitutional right. (*People*

---

[2] In 1963 the Illinois Legislature amended the statute to substitute "incompetency" for the earlier word "insanity," and in 1973 the terminology was changed to "unfitness." See *People v. Davis*, 25 Ill.App.3d 1007, 1012-13, 324 N.E.2d 58 (5th Dist. 1975).

[3] Contra, Council Commentary, Ill. Ann. Stat., ch. 38, § 1005—2—1. (Smith-Hurd 1973).

*v. Hall*, 45 Ill.2d 547, 259 N.E.2d 799 (1970).)[4] The trial court here declined to decide the constitutionality of the new statute and held the prior law applicable since the offense charged occurred before January 1, 1973. However, at the competency hearing, the trial court changed its stance and ruled that the new statute, not the old, governed the burden of proof.

To resolve the question of which law governs, we turn to section 8—2—4 of the Code of Corrections (Ill. Rev. Stat., ch. 38, § 1008—2—4), which provides:

> "Prosecution for any violation of law occurring prior to the effective date of this Act is not affected or abated by this Act. If the offense being prosecuted has not reached the sentencing stage or a final adjudication, then for purposes of sentencing the sentences under this Act apply if they are less than under the prior law upon which the prosecution was commenced."

This section has been held to mean that pre-sentencing procedures prescribed by the Code of Corrections cannot be applied in aid of a defendant for a crime committed before the effective date of the Code. (*People v. Blythe*, 17 Ill.App.3d 768, 308 N.E.2d 675 (4th Dist. 1974).) "We think it is clear from the plain reading of [section 8—2—4] that it has no reference to procedures but is limited solely to sentences * * *." 17 Ill.App.3d 768, 772, 308 N.E.2d 675, 679.

The plain language of section 8—2—4 compels us to conclude that the law in effect before January 1, 1973, must govern defendant's fitness hearing since the hearing was part of a prosecution for a violation of law occurring in August, 1972, and thus is not affected by the new statute.

In the recent case of *People v. Duhr*, 27 Ill.App.3d 651, 327 N.E.2d 267 (5th Dist. 1975), the court held that the new Code provisions determined defendant's right to a jury trial at a restoration of competency hearing, although the crime charged and the hearing where defendant was held unfit to stand trial both occurred prior to the enactment of the new Code. *Duhr* can be distinguished from the case at bar because it involved a question of the right to a jury in the context of a restoration hearing. However, we also note that the court in that case did not consider the provisions of section 8—2—4 of the Unified Code of Corrections (Ill. Rev. Stat., ch. 38, § 1008—2—4) and the legislative intent set forth therein.

■■ Therefore, we hold that the trial court should have instructed

---

[4] Contra, *People v. Welsh*, 30 Ill.App.3d 887, 333 N.E.2d 572 (2d Dist. 1975); Council Commentary, Ill. Ann. Stat., ch. 38, § 1005—2—1 (Smith-Hurd 1973).

the jury that defendant had the burden of going forward with evidence of unfitness, and after doing so, the burden shifted to the State to prove defendant's fitness by a preponderance of the evidence. Failure to instruct the jury correctly is reversible error in this instance, and a new trial must be held to preserve the constitutional right of defendant not to be tried while unfit. In accord with the procedures set out in *Pate v. Robinson*, upon retrial, defendant may, if she chooses, raise the question of her fitness to stand trial as of that time, and a new fitness hearing must then be held in conformity with the views expressed in this opinion.

■■ Defendant also urges that we declare it to be constitutionally impermissible to compel a narcotic addict to stand trial during a period of addiction. However, defendant admits that addiction alone is not conclusive proof of unfitness to stand trial, and we are convinced that the fitness hearing procedure contained in our statutes adequately protects narcotic addicts from being tried unfairly.

Having found that defendant is entitled to a new trial, we must consider other issues raised on this appeal which may arise again in the course of the new trial, or which may affect its outcome.

During the fitness hearing one of the psychiatrists who had examined defendant was asked by the prosecutor on cross-examination:

"Q. Did she deny the charge against her to you?
A. Yes, she did."

Defendant contends that the trial court committed reversible error by permitting this question to be answered over defendant's objection, contrary to section 5—2—1(h) of the Unified Code of Corrections (Ill. Rev. Stat., ch. 38, § 1005—2—1(h)), which provides:

"(h) No statement by the deefndant in any examination regarding his fitness, shall be admissible on the question of guilt."

■■ Since such statements are admissible for the purpose of showing defendant's mental condition, but not for the truth of the statements (*People v. Williams*, 38 Ill.2d 115, 230 N.E.2d 224 (1967)), the testimony was properly allowed at the fitness hearing. Furthermore, we believe no error occurred because section 5—2—1(h) does not apply to this case. That section is a part of the Unified Code of Corrections, effective January 1, 1973, replacing section 104—2 of the Code of Criminal Procedure of 1963 (Ill.. Rev. Stat., ch. 38, § 104—2(d)), which prohibited admission of such statements *against the defendant* on the issue of guilt. Section 104—2(d) governs the prosecution of this case, as we determined earlier, and the statement made here *in favor of defendant* was therefore permissible.

III. *The Trial*

Defendant contends that during the trial on the merits it was error

to admit evidence of prior criminal offenses committed by defendant. Detective Simmons testified that, on June 22, 1972, he went to defendant's house with an informer who arranged for defendant to sell heroin to Simmons. The transaction took place in the bedroom where defendant gave Simmons a tinfoil packet of heroin and took his $65 payment. Defendant then agreed to make future sales to Simmons alone.

Simmons again went to defendant's home about 2 p.m. on June 29 and purchased a "quarter-spoon" packet of heroin from her for $30. Simmons asked if he could purchase a "spoon" of heroin (worth about $100), and defendant stated that she had just talked to her contact on the telephone and would have to drive to Chicago that night to pick up more heroin, and told Simmons to call her later. Later that night, during a telephone conversation, defendant told Simmons he could pick up a spoon of heroin the next day, but that transactoin was never completed.

Defendant cites *People v. Rivas*, 5 Ill.2d 556, 126 N.E.2d 638 (1955), and *People v. Brown*, 83 Ill.App.2d 457, 228 N.E.2d 505 (1967), but these cases are not applicable in this situation.

■■ Evidence of other narcotic transactions by a defendant may be admitted if relevant for any purpose other than to show a mere propensity to commit the crime, and will be allowed to prove defendant's identity, guilty knowledge, design, or system of operations. (*People v. Palmer*, 47 Ill.2d 289, 265 N.E.2d 627 (1970); *People v. Cole*, 29 Ill.2d 501, 194 N.E.2d 269 (1963).) In *Cole*, defendant was charged with both sale and possession of narcotics. The court stated that evidence of prior transactions was admissible because it "tended to remove any doubt that the defendant's conduct * * * was inadvertent or innocent." 29 Ill.2d 501, 504.

In *People v. Wilson*, 46 Ill.2d 376, 263 N.E.2d 856 (1970), the defendant was convicted of unlawful possession of narcotics, but was acquitted of a charge of sale of narcotics. The court held evidence of prior sales admissible, and stated:

> "In each case it must be determined from the facts as to whether the evidence of other crimes is so closely connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried. * * * [D]efendant's defense was that he had no knowledge or control of the narcotics, and the evidence of the sale was, therefore, admissible to show defendant's knowledge, motive, and intent in the possession of narcotics. Therefore, the evidence of the other crime of sale of narcotics was needed to refute the defendant's contention that he had no knowledge of the narcotics that were found in the apartment and

that they belonged to one of the other adults present." 46 Ill.2d 376, 380-81, 263 N.E.2d 856, 859.

■■ As in Wilson, defendant here argues that the State failed to prove defendant's possession and control of the narcotics seized, since her ex-husband and others were physically present in the bedroom where large quantities of heroin were found. Defendant was apprehended in the bathroom where an IBI agent saw her flushing tinfoil packets down the toilet. A box containing a tinfoil packet of .41 grams of heroin was also found in the bathroom. The facts of this case clearly are within the exception to the exclusionary rule, and the trial court did not err by permitting Simmons to testify to prior drug transactions for the purpose of proving defendant's system of operation, motive, and guilty knowledge necessary to establish the crime of possession.

■■ Defendant's final contention is that her petition for treatment as a narcotic addict under the Dangerous Drug Abuse Act (Ill. Rev. Stat., ch. 91½, § 120.1 et seq.) was improperly denied. Before trial, defendant petitioned for treatment as an alternative to criminal prosecution, and sought to renew her petition in her post-trial motion. The petition was dismissed because, under section 120.8, persons charged or convicted of violations of section 401 of the Illinois Controlled Substances Act (Ill. Rev. Stat., ch. 56½, § 1401) (possession of narcotics with intent to deliver) and section 402 (possession of narcotics) are not eligible for treatment as addicts. Defendant argues that the ineligibility provision is unconstitutional.

Since defendant asserts in her brief that she has successfully completed methadone treatment for heroin addiction and is no longer an addict (defendant's brief, p. 50), this question is moot, and the constitutionality of the statute need not be determined on this appeal.

Reversed and remanded.

ALLOY, P. J., and BARRY, J., concur.