THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DOUGLAS KAUFMAN, Defendant-Appellant.

Third District   No. 77-370

Opinion filed December 20, 1978.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

William D. Henderson, State's Attorney, of Macomb (James E. Hinterlong and Joseph A. Mueller, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Douglas Kaufman appeals from his conviction for attempted murder (Ill. Rev. Stat. 1975, ch. 38, par. 8—4(a)) and a consequent sentence of not less than 20 years nor more than 30 years, as well as an appeal concerning the fitness of defendant in a pretrial fitness hearing pursuant to section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1). Defendant contends, on appeal, that it was error to allow testimony that the defendant, when arrested, exercised his constitutional right to remain silent until he had consulted an attorney. Secondly, the defendant argues that the comment by the State in closing argument, at the fitness hearing, that the defendant failed to testify, was prejudicial error even though an objection was immediately made and was sustained by the court. A final issue is raised concerning the fitness hearing, to the effect that the court abused its discretion in refusing to give to the jury an instruction and jury verdict, which would have advised the jurors that, as the result of a finding by the jury of defendant's unfitness, would be that he be hospitalized and subject to proceedings under the Mental Health Code. The sole issue raised on appeal, which concerns the trial itself, is whether the sentence of 20 to 30 years was excessive and unwarranted, in light of the defendant's background and the nature of the offense.

In the pretrial fitness hearing, the jury was required to determine

whether the defendant was unable "to understand the nature and purpose of the proceedings against him; or to assist in his defense." (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(a).) At the fitness hearing, held on April 18, 1977, the State introduced a three-page letter by the State's expert witness, a Dr. Chapman. After reciting pertinent aspects of defendant's personal history and certain statements made by defendant during consultation with Chapman, the letter concluded that the defendant was not impaired by mental illness or defect to such a degree as to prevent him from understanding the nature of the charges and proceedings or from participating in his own defense. The other evidence presented by the State at the fitness hearing was the testimony of the McDonough County sheriff, who testified, over objections made by the defendant, that the sheriff was present on November 23, 1976, when the defendant was arrested. The sheriff stated that on two occasions, within an hour of defendant's arrest, defendant was advised of his *Miranda* rights by a State trooper. The sheriff testified that defendant responded on both occasions by stating that he understood those rights and that he did not wish to talk about the case until he had seen an attorney.

Evidence presented to show the defendant's unfitness to stand trial, included testimony by his mother, his brother, his sister, and by a clinical psychologist and a psychiatrist. The defendant's mother testified that, as a child, defendant contracted spinal meningitis which resulted in permanent visual and audio impairment and a learning disability. Testimony by all members of the family disclosed that Douglas, when in the custody of his father, as a child, was abused and humiliated on several occasions. There was also testimony of the defendant's serious drug abuse and his four suicide attempts, at least three of them by drug overdoses. As a result of these attempts, the defendant was hospitalized at mental health facilities in 1973, 1974 and, again, in 1975.

The clinical psychologist who had conducted a 2½-hour interview with defendant, which included the administration of various tests, testified that the defendant's "reality orientation is so fragmented * * * that he does not understand the nature of the charges." The psychologist also stated that in his opinion, the results of the tests indicated that defendant had severe brain damage and an I.Q. of 61. The psychiatrist, after similar examination and testing of the defendant, concluded that defendant suffered from three mental diseases, namely, organic brain disease, psychosis and mental deficiency. The conclusion of the psychiatrist was that the defendant did not exhibit insight in the nature and depth of the criminal proceeding and that he could not cooperate with counsel. At the conclusion of the evidence, a conference on the instructions was held in chambers. The defense, at the conference, offered the following two instructions:

"No. 7: If the defendant is found unfit to stand trial the court shall remand the defendant to a hospital and order that proceedings be conducted in accordance with the Mental Health Code.

No. 13: We, the jury, find the defendant Douglas Kaufman unfit to stand trial and remand him for further proceedings under the Mental Health Code."

These instructions, which were tendered by the defense, were refused by the court.

Closing arguments were then held and in its closing, the attorney for the State at one point commented:

"Now we can listen to psychiatrists from now until the cows come home but we haven't heard Douglas Kaufman speak."

An immediate objection was made to this comment and was sustained by the court. After listening to the evidence and arguments, the jury found the defendant fit to stand trial. The trial was held a month later.

At the trial it was established that the defendant Douglas Kaufman, on November 23, 1976, was driving down a McDonough County highway. A State trooper, Carl Kobler, stopped the defendant's vehicle after he noticed it improperly pass another car. Kobler got out of the squad car and approached the stopped vehicle, with Kaufman and his sister inside. The defendant asked something to the effect of "Is there anything I can do for you, officer." Kobler answered, "You can start by getting out of the car." At that point, the defendant stuck a revolver out the window and began firing at Trooper Kobler. One shot hit Kobler in the arm and he fell down. The defendant then fired several shots at Kobler while Kobler was on the ground, none of which struck Kobler. Defendant then fled but was soon apprehended.

Psychiatric evidence by the experts was introduced again during the trial, and each gave substantially the same testimony as was given at the fitness hearing. The jury, after hearing all the evidence, and being fully advised of the applicable law, found the defendant guilty of attempted murder and two counts of aggravated battery. No convictions were entered on the battery counts since they arose out of the same act as the attempted murder. On the murder attempt conviction, the court imposed a sentence of from 20 to 30 years, as we have noted.

■■ ■ The first issue raised on the appeal is whether defendant's constitutional rights were violated by the testimony of the sheriff at the fitness hearing, that the defendant, when advised of his rights at the time of the arrest, stated that he understood them and did not want to talk until he had an attorney. As we have noted, the focus of the fitness hearing is on whether the defendant is able to understand the nature and purpose of the proceedings against him and whether he is able to assist in his own defense. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(a).) No question of

guilt is presented at a fitness hearing. The questions of the defendant's competence or fitness must be answered as of the time of the fitness hearing, which is a civil proceeding apart from the criminal trial. (*People v. Cole* (4th Dist. 1973), 11 Ill. App. 3d 412, 296 N.E.2d 733.) While the question of fitness must be directed to the time of the hearing, evidence bearing upon fitness issues often must, of necessity, focus upon facts about the defendant's past conduct and health. Subsection (e) of section 5—2—1, which catalogs various matters admissible on the fitness question, contemplates such evidence of past behavior at the fitness hearing. In the instant case, the trial court found that the evidence introduced, showing that defendant, at the time of the offense, stated that he understood his rights and wished to exercise them, was tentatively probative and related to the issues presented at the fitness hearing. We agree with this conclusion.

Defendant's statement that he understood his rights and his subsequent silence, are relevant to his understanding of the criminal proceedings against him, which, as a practical matter, actually began at the time of the arrest. The evidence referred to, which relates to defendant's understanding of the initial stages of the criminal process as it involves him, also has a relevance to the question of his ability to assist in his own defense. With respect to the defendant's rights under the Fifth Amendment to the Federal Constitution, the defense relies heavily on the opinion of the United States Supreme Court in *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, in support of its argument that the defendant's rights were violated in this case. *Doyle* held that the State, in a criminal case, may not use the fact that a defendant exercised his rights at the time of the arrest to impeach him at the trial, when he tells an exculpatory story. The court's rationale for that holding was its finding that implicit in the *Miranda* warning given a defendant is the assurance that the exercise of those rights will carry no penalty. (*Doyle v. Ohio* (1976), 426 U.S. 610, 618, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240.) The penalty, when such evidence is allowed at a criminal trial, is the likelihood that such evidence will give rise to an impermissible inference of guilt, whether directly or through impact upon the jury's assessment of the defendant's credibility. Similar considerations are not implied in the present case, where no question of defendant's guilt or innocence is at issue. The question in the fitness hearing is fitness to stand trial. In such proceeding, the jury is not determining defendant's guilt but simply receiving evidence as to whether or not he is fit to stand trial.

■■ The Fifth Amendment is not violated where a defendant's silence or his statements to a psychiatrist are admitted in a competence hearing for the purpose of showing the defendant's mental condition and not for the purpose of showing guilt. (*People v. Williams* (1967), 38 Ill. 2d 115, 230

N.E.2d 224; *People v. Johnson* (1st Dist. 1976), 42 Ill. App. 3d 194, 355 N.E.2d 577; *People v. McCullum* (3d Dist. 1975), 33 Ill. App. 3d 451, 338 N.E.2d 248, *aff'd* (1977), 66 Ill. 2d 306, 362 N.E.2d 307. See also Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(h).) Similarly, the Fifth Amendment's privilege against self-incrimination is not violated in the instant case where the defendant's exercise of his rights is used to show his mental condition and understanding and not to show his guilt. We, therefore, find no error in the court's allowance of such evidence at the fitness hearing.

■ Defendant next contends that the State's comment about the defendant's failure to testify at the fitness hearing was prejudicial error. In all the cases cited by the defendant on this issue, the courts were faced with such comment during a criminal proceeding where guilt was at issue. The prejudice in those cases results from the implication of guilt inherent in such comment, in a proceeding where a jury is asked to determine guilt or innocence of a defendant. In a civil proceeding, such as a fitness hearing, where the issue of guilt is not before the jury, such comment is objectionable as irrelevant, but it does not carry the same prejudicial impact as it does within a criminal case. We do not approve of the use of such comment and believe it is improper. Given the nature of the proceeding involved in the instant case and the fact that an objection was immediately made and sustained, we determine that no error was presented here which would justify a new trial. *People v. Sawyer* (1969), 42 Ill. 2d 294, 251 N.E.2d 230.

■ Error is also assigned on appeal to the decision of the trial judge in refusing to submit to the jury, in the fitness proceeding, two instructions tendered by the defense to which we have referred heretofore. These instructions sought to apprise the jury, in the event of a finding by them that defendant was unfit to stand trial, defendant would be subject to further proceedings under the Mental Health Code. The purpose of the instructions was to indicate to the jury that the defendant would not be freed immediately if they found him unfit to stand trial.

While we know of no direct precedent in Illinois, a number of jurisdictions have addressed themselves to an analogous question: whether, in a criminal case where insanity is an issue, the jury should be informed of the consequences of a verdict of not guilty by reason of insanity. On this question, the majority rule in the Federal courts preponderates in favor of refusing to give such instructions. (*United States v. Greene* (7th Cir. 1974), 497 F.2d 1068, 1977.) That is also the rule in a majority of State jurisdictions which have addressed the issue. (See *Commonwealth v. Mutina* (1975), 366 Mass. 810, 323 N.E.2d 294, for an extensive discussion of the cases from throughout the country.) Support for the majority view that such instructions should not be given is found in the traditional notion that the question of the consequences of a verdict is

one outside the province of the jury. Further support for the majority rule is found in concern by the courts that such instruction would distract the jury from the insanity issue and would invite compromise verdicts. *United States v. Greene* (7th Cir. 1974), 497 F.2d 1068, 1077.

In any event, in the instant case we are faced with the question of the propriety of these instructions within the context of a civil fitness proceeding, where the jury does not have before it the issue as to guilt or innocence of the charge against defendant. It is apparent that there should be less likelihood of a jury in a fitness hearing ignoring strong evidence of unfitness out of an apprehension of releasing a dangerous person.

The issue before the jury in a fitness hearing is the competence of the defendant to stand trial. Submission of instructions dealing with the consequence of a finding of unfitness presents the potential for distraction of the jury from that determination. Our determination in this case with respect to the fitness hearing is not to be understood as any guide for the use of instructions in a criminal case where the issue of guilt or innocence is involved.

■■ ■ The final issue raised by the defendant is the contention that the trial court abused its discretion in the sentence given to the defendant of 20 to 30 years. As stated in *People v. Thomas* (3d Dist. 1976), 38 Ill. App. 3d 689, 692, 348 N.E.2d 285:

> "The imposition of a sentence is a matter of judicial discretion and the sentence imposed by the trial court should not be changed by a reviewing court unless it is apparent that the judge abused his discretion."

In the instant case, the trial court was presented with a defendant who had committed a vicious attack upon a police officer. That one of the four or five shots fired at the officer by defendant did not kill the officer was simply a fortunate result for which the defendant in this case can claim no credit. The defendant fired several shots while the officer lay wounded upon the ground.

On the basis of the record in the course of this trial, it is clear that the trial court did not abuse its discretion in imposing the sentence in this case. For the reasons stated, therefore, the judgment and sentence of the Circuit Court of McDonough County are affirmed.

Affirmed.

BARRY, P. J., and STENGEL, J., concur.