THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MARTY PRUITT (Impleaded), Defendant-Appellant.

Fourth District    No. 13336

Opinion filed December 2, 1976.

Richard J. Wilson and John L. Swartz, both of State Appellate Defender's Office, of Springfield, for appellant.

Richard J. Doyle, State's Attorney, of Danville (G. Michael Prall and James R. Sanders, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant, Marty Pruitt, was convicted of the offense of armed robbery after a jury trial in the Circuit Court of Vermilion County. He was sentenced to 5 to 20 years imprisonment. On appeal, he claims that (1) his guilt was not proved beyond a reasonable doubt; (2) the court erred in permitting a witness called by the prosecution to be cross-examined by the prosecution as a court's witness and impeached by prior inconsistent statements; and (3) improper statements and argument by the prosecutor denied him a fair trial.

The evidence showed that two white males wearing face masks, stocking caps and old army coats committed an armed robbery in a grocery store in Westville at about 7:55 p.m. on October 28, 1974. One of the robbers held a gun. One of the witnesses identified that individual as Randy Brown. No one identified the other robber. Mira Oliphant, who at the time of the robbery was living with defendant and his brother Rick Pruitt in Westville, testified that on that date defendant and Randy Brown

had been at their residence and left just before 8 p.m., returning about one hour later. Gary Dukes testified that he was in the parking lot of the grocery store just prior to the robbery. Billy Dieu came up to him and they talked. Dieu left, and shortly thereafter Dukes saw two persons with face masks, stocking caps, and army coats run up to the store, "hold up the store," and leave.

Dukes further testified that on the next evening he went to the Pruitt residence and found defendant, Rick Pruitt, Randy Brown, Mira Oliphant and Theresa Tentorie there. Billy Dieu apparently arrived shortly thereafter. Dukes stated that while all were present he asked if "they" held up the store and that someone other than defendant answered "yeah." Dukes then asked defendant if the gun used was loaded and defendant answered that it was.

Theresa Tentorie testified that at 12:30 a.m. on the next morning, she, Billy Dieu, Mira Oliphant, defendant, and his brother were present at the Pruitt residence. Defendant was sitting on a chair with a roll of bills in his hand and stated that he would like to change the smaller bills for larger bills but that doing so would create too much suspicion so soon after the robbery. A gun, identified at trial by a victim of the robbery as the gun used, some bullets of the proper caliber for the gun, and a quantity of dollar bills were later seized by law enforcement officers from a drawer in a bedroom in the house where the Pruitts had been living.

■■ Evidence of defendant's presence with Brown shortly before and shortly after the robbery, defendant's expression of knowledge that the gun used to commit the robbery was loaded, the finding of that weapon in a drawer in defendant's residence, defendant's possession after the robbery of a roll of bills, and his statement that he was afraid to exchange the smaller bills for larger ones because of the recency of the robbery were, in total, sufficient to prove the defendant's guilt beyond a reasonable doubt.

Mira Oliphant, a prosecution witness, first testified that she could not remember if Brown and defendant left the residence before 8 p.m. on the evening of the robbery. The prosecution indicated to the court that she had surprised them by contradicting an earlier statement and asked leave to call her as a court's witness. The court denied the request and required the prosecution to lay a further foundation. In further testimony before the jury, Mira Oliphant then remembered that the two had left before 8 p.m. and returned about one hour later. She was still unable to remember conversation occurring when the two returned and conversation occurring on the noon of the next day.

Over defendant's objection, the court then permitted the State to cross-examine the witness as a court's witness. Then, over defendant's further objection, the court permitted the State to ask the witness if she had not

told an investigator for the State that on both occasions defendant made statements admitting the commission of the robbery and that defendant and Brown had divided the proceeds from the robbery in her presence. On cross-examination by the defendant, the witness said she was "high" on a controlled substance at the time she was supposed to have made these statements.

In *People v. Chitwood* (1976), 36 Ill. App. 3d 1017, 344 N.E.2d 611, we recently passed upon the propriety of the calling and impeachment of a court's witness under somewhat similar circumstances. After examining the authorities, we concluded that a nonoccurrence witness such as Mira Oliphant, if shown to be unreliable, could be called as a court's witness if, as stated in *People v. Moriarity* (1966), 33 Ill. 2d 606, 615, 213 N.E.2d 516, 521, her testimony "would relate to direct issues and is necessary to prevent a miscarriage of justice." The record is unclear as to whether, before the court called Ms. Oliphant as a court's witness, a showing had been made that she had told the investigator that defendant and Brown divided the proceeds in her presence, but if this had been done, the court would have been justified in calling her as a court's witness.

In any event, error occurred in permitting the State to impeach Ms. Oliphant with her prior inconsistent statement because at the time of her impeachment there was nothing in her then existing testimony to impeach. Had the witness maintained her first statement that she did not remember defendant and Brown leaving the residence shortly before 8 p.m. on the night of the robbery and returning one hour later, that testimony would have damaged the State's case by giving defendant an alibi. When she admitted that she remembered that the two were gone during that time, none of her testimony damaged the State's case. The witness' failure to testify consistently with her prior statements disappointed the State but did not make its case weaker in any respect than if she had not testified. In *Chitwood*, in reliance upon *People v. Johnson* (1929), 333 Ill. 469, 165 N.E. 235 and McCormick, Evidence §36 (2d ed. 1972), we ruled that under such circumstances, impeachment of a court's witness by prior inconsistent statements is impermissible.

■■ Unlike in *Chitwood*, the court here fully advised and instructed the jury that the evidence of the inconsistent statements was to be considered solely to impeach, but in *People v. Bailey* (1975), 60 Ill. 2d 37, 322 N.E.2d 804, such instruction was held insufficient to justify impeachment of a court's witness when the impeachment was ruled to be a subterfuge to give substantive effect to the impeaching evidence. The same rule is applicable here where there was nothing in the witness' testimony to impeach. The State seeks to justify the impeachment on the basis that they had promised in their opening statement to place before the jury the evidence they thought the witness would produce and that

the impeachment should show why the evidence was not produced. To serve this purpose, however, the impeaching evidence would have to be given substantive effect.

In view of the closeness of the evidence in this case, the prejudice to the defendant in having this highly prejudicial evidence, unnecessary for impeachment, before the jury, requires a reversal for a new trial. We see no reason why the questions concerning statements and arguments of the prosecutor should arise at that trial and we do not rule on this issue.

The conviction and sentence is reversed and the case remanded for a new trial.

Reversed and remanded.

CRAVEN, P. J., and REARDON, J., concur.