THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ELBERT LEMUEL WILLIAMS, Defendant-Appellant.

Fourth District    No. 13521

Opinion filed April 7, 1977.

Richard J. Wilson and John L. Swartz, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald Dozier, State's Attorney, of Bloomington (Robert C. Perry and Jeffrey B. Levens, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant Elbert Williams appeals from a judgment of the Circuit Court of McLean County which, after a jury trial, found him guilty of an armed robbery occurring on October 28, 1973, and sentenced him to 5 to 15 years imprisonment. On appeal the only error cited by defendant is a ruling of the trial court permitting the State, over defendant's objection, to cross-examine its witness Peggy Manns as a court's witness about a prior statement she made to the prosecutor which was inconsistent with her testimony on cross-examination by the defendant.

Ms. Manns testified on direct examination by the State that on the night before the robbery she saw one Ray Williams at a party and that he introduced her to two males, one of whom Ray identified as his brother and the other as a friend. Ray referred to one of the two as "Sonny." She further testified that later in the evening, while these three men were with her, one of them stated that "Terry" was going to be robbed the next day. Ms. Manns' testimony was the only evidence presented of this conversation. On cross-examination, she stated that defendant was definitely not the person identified by Ray Williams as his brother. Out of the presence of the jury the prosecutor stated to the court that just 15 minutes earlier the witness, after observing defendant, had said that she could not tell whether defendant was the person identified as the brother. The prosecutor asked leave to cross-examine Ms. Manns as a "hostile" witness. Over defendant's objection the court permitted the State to cross-examine her as a "hostile" or "court's" witness. When so questioned, Ms. Manns admitted telling the prosecutor that she could not tell whether defendant was the person identified as the brother but did so because of an offer of a bribe made to her by some of the people robbed. Defendant then moved for a mistrial, which was denied.

■■ In *People v. Chitwood* (1976), 36 Ill. App. 3d 1017, 344 N.E.2d 611, and *People v. Pruitt* (1976), 44 Ill. App. 3d 161, 359 N.E.2d 1048, citing various supreme court cases, we have ruled that when a witness is called by the State and then gives other than the expected testimony favorable to the State, the witness may not be called as a court's witness and cross-examined by the State as to prior statements made by the witness relating to the expected favorable testimony if the witness' testimony does not damage the State's case but merely leaves the case where it would have been had the witness not testified at all. As stated by McCormick, Evidence § 36 (1972), the cross-examination is impermissible

if the unexpected testimony merely disappoints but does not damage the State.

Here Ms. Manns was not an occurrence witness and was the only witness to testify to the purported conversation on the day before the robbery. Thus, for her to say that defendant was not one of the people present at the conversation did *not* put the State in a weaker position than if she had not testified at all. In all of the cited cases, however, the attempted cross-examination by the State was done for the purpose of impeaching its witness' testimony given on direct examination. Here the testimony to be impeached was testimony concerning the witness' ability to identify the defendant as a party to the conversation, testimony that was brought out for the first time by the defendant on cross-examination. The testimony sought to be impeached had weakened the State's case from its position after the State's direct examination.

Although maintaining that the trial court did not err, the State also contends that any error was harmless because of the weight of the evidence in support of the jury's verdict of conviction. The evidence is undisputed that Terry and Donna Whitecotton, who lived in Harvey, were visiting in the Bloomington home of Terry and Mary White shortly after noon on October 18, 1973. Terry White was not present, but Ray Williams and two other black men were there in addition to Mary White and the Whitecottons. The two other men left and Ray Williams went to the front door, let them out, and then apparently let two other black men in. The two men proceeded to hold everyone present, including Ray Williams, at gun point, demanded and received the money that they had, searched the rest of the house including the kitchen, bound them, and left.

Although neither the Whitecottons nor Mary White testified to having seen defendant before the occurrence they each positively identified him at trial as the taller of the robbers. The evidence was undisputed that the robbers were in the house for about 45 minutes, that each of the three witnesses had an opportunity to view the face of the robber identified as defendant closely for extended periods, and that the robbers did not wear masks. Any discrepancies in their testimony were not of major significance. Ray Williams did not testify.

Defendant presented the testimony of a neighbor of the Whites' and her 9-year-old daughter. They testified that they lived across the street from the Whites and that about noon of the day of the robbery they saw two black men in the yard of the Whites' house. The witnesses described the clothing of the taller of the two as being somewhat different than that described by the victims. The mother was unable to say whether defendant was the taller of the two men seen. The daughter stated that he was not.

Defendant testified on his own behalf and stated that he was in Bloomington the weekend of the robbery. The night before the robbery he had been at a party but did not see his brother or Peggy Manns there. He was accompanied by a male friend he had brought from St. Louis. After the party he rode around in a car with the friend and a lady friend. He had not been able to contact either of them to testify at the trial. While at the party he learned from an unidentifiable person that marijuana might be purchased at the Whites'. On the day of the robbery he went to the Whites' and made a purchase of marijuana, stayed a few minutes and left. He stated that he did not enter the kitchen.

Bloomington police lifted a fingerprint from a stove handle in the kitchen of the Whites' house. An officer of that police department who had training and experience in fingerprint identification and a fingerprint examiner for the Department of Law Enforcement both testified that although the fingerprint lifted was not of good quality, it was sufficient for them to form the opinion that it matched a fingerprint taken from the defendant.

■■ Upon the record presented we determine the proof of defendant's guilt to be overwhelming. If any error occurred in permitting the State to cross-examine Peggy Manns, we do not think that the jury was influenced or prejudiced thereby. Accordingly, we determine any resulting error to be harmless. *People v. Manzella* (1974), 56 Ill. 2d 187, 306 N.E.2d 16, *cert. denied*, 417 U.S. 933, 41 L. Ed. 2d 236, 97 S. Ct. 2644.

The judgment appealed from is affirmed.

Affirmed.

CRAVEN, P. J., and REARDON, J., concur.